

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CR-15-235

| | |
|---|---|
| ISMAEL RAQUEL-DIEGUEZ<br>APPELLANT | **Opinion Delivered** November 4, 2015 |
| V. | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT<br>[NO. CR-2013-351-6] |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE MARK LINDSAY, JUDGE |
| | AFFIRMED |

## RITA W. GRUBER, Judge

Ismael Raquel-Dieguez was convicted by a jury of delivery of methamphetamine weighing more than 10 grams but less than 200 grams, and he was sentenced to a term of eighteen years' imprisonment in the Arkansas Department of Correction. The charge against him arose from a controlled buy in Springdale, Arkansas, on August 22, 2012. He now appeals, raising two points. First, he contends that the trial court abused its discretion by denying his motions for a mistrial because he was denied his rights under the Confrontation Clause and because of prejudicial statements by the State and the court in rebuttal closing argument. Second, he contends that the trial court erred by receiving into evidence a substance that was not authenticated by a proper chain of custody. We affirm.

Appellant made the first of several motions for a mistrial after this portion of the State's opening statement:

The methamphetamine was processed by the local DEA office, packaged for shipment,

and shipped down to the South Central Laboratory, federal laboratory, in Dallas, Texas. The methamphetamine actually got tested twice. It was found to be an ounce of methamphetamine. It was 99 percent pure. It was methamphetamine.

Appellant based his mistrial motion on the State's reference to two tests, "one of which is inadmissible as a matter of law . . . the analyst who performed that test is not present here at trial to testify and be cross-examined on that testing." The trial court denied the motion as well as appellant's subsequent motions for a mistrial.

The State's evidence at trial included testimony by Detective Alex Amaya of the Rogers Police Department, who worked as a task-force undercover officer for the Drug Enforcement Administration (DEA); Hilda Lemus-Orellana, the DEA's confidential informant who purchased the substance purported to be methamphetamine; and Paul Galat, a senior forensic chemist at the DEA's South Central Laboratory in Dallas, Texas. Over appellant's objections, the State introduced into evidence both Galat's September 10, 2014 laboratory report on the substance that appellant had sold in the controlled buy and a sealed bag containing the tested substance.[1] The report, which was positive for methamphetamine hydrochloride, contained the following statement: "Amended report to reflect re-analysis. Refer to original laboratory report dated 12-26-2012." The State did not seek to admit the original laboratory report; nor did it call as a witness the chemist who performed the original analysis.

According to the testimony in this case, Hilda Lemus-Orellana and Detective Amaya

---

[1]Appellant's objections included allegations of confrontation violations and an insufficient chain of custody, which we discuss later in this opinion.

2

drove together to a Wal-Mart parking lot after Lemus-Orellana arranged to buy methamphetamine from appellant for $1850. Appellant arrived in his car and Lemus-Orellana got in; she paid him, and he sold her a substance purported to be methamphetamine. She got back in Amaya's vehicle and put a baggie containing the substance on the console. Amaya field tested "residue in the teeth at the top of the ziplock part of the bag," which was positive for methamphetamine. After the substance was packaged and weighed by DEA agents, it was sent to the DEA's South Central Laboratory in Dallas, Texas—which is responsible for analyzing and storing all drug evidence that DEA collects. The substance remained there until it was needed for appellant's trial.

Paul Galat testified that chemists at the South Central Laboratory accept only envelopes that have been sealed by DEA agents and sent to the laboratory's vault. The laboratory's chain-of-custody report for the substance in this case showed that the substance was stored in the vault after it was received at the laboratory, Galat checked it out and turned it back in, and it later was sent to Arkansas for trial. Galat determined in his testing that the gross weight was 60.8 grams. He performed a marquis-color test that indicated the substance could be methamphetamine and a test that confirmed the presence of methamphetamine. After obtaining a net weight of 27.4 grams—the weight without the packaging—Galat ground the methamphetamine into a fine powder in order to perform instrumental tests, including a "liquid chromatography" test to determine purity. Galat's report of his test results—methamphetamine hydrochloride with a purity of 99.2 percent—used the same case number that was on the bag of methamphetamine. Galat said that he could tell that the

3

evidence had not been tampered with because the bag had his seal and evidence sticker at the bottom, the agent's intact seal on the top, and the manufacturer's seals on the sides, and because everything inside it had Galat's initials and the date of his analysis.

Outside the presence of the jury, Galat stated in voir dire that another analyst, Dustin Barr, previously had tested the methamphetamine. Galat confirmed from the chain-of-custody document that Barr had checked out the methamphetamine on November 19–20 and on December 21–26, 2012. Barr prepared his laboratory report on December 26, 2012, and it was approved by the acting laboratory director five days later. Galat had not observed the previous testing but knew that Barr had done it because Barr's initials were on the bag and he had prepared a report. Galat explained that his supervisor asked him to retest the methamphetamine in order to testify as a witness in this case because a medical condition prevented Barr from traveling.

In closing argument, appellant referred to Barr and to the periods of time that he had checked out the methamphetamine in the laboratory:

> [The prosecutor is] going to tell you that none of this matters. He's going to tell you not to worry about it. Don't worry about Mr. Barr. Don't worry about what happened to the evidence back in 2012 twice, two days, two periods of time, one day, five days over the holidays. Don't worry about that. It doesn't matter.

The State responded in rebuttal closing argument, "You heard [defense counsel] mention Dustin Barr. Why isn't he here? They didn't call him." Appellant objected and moved for a mistrial:

> DEFENSE COUNSEL: Objection. The defendant has no burden whatsoever to call witnesses in this case.

4

| | |
|---|---|
| THE COURT: | You have no burden of proof. But you are allowed to subpoena witnesses. |
| | . . . . |
| PROSECUTOR: | I'll continue. We didn't call Mr. Barr here. There were reasons. Don't you think if there were shenanigans that he would be subpoenaed by the defense? Look closer. |
| DEFENSE COUNSEL: | We renew our motion for a mistrial. |
| THE COURT: | Denied. |

Appellant then moved for a mistrial on the grounds of confrontation. And again, his motion was denied.

I. *Whether the Trial Court Abused its Discretion by Denying Appellant's Motions for a Mistrial*

Appellant contends that the trial court abused its discretion by denying his motions for a mistrial based on violation of his Sixth Amendment confrontation rights and on prejudicial remarks by the State and the court during the State's rebuttal closing argument. Questions of constitutional interpretation, such as whether there has been a Confrontation Clause violation, are subject to de novo review. *E.g.*, *Seely v. State*, 373 Ark. 141, 145, 282 S. W.3d 778, 782 (2008). The decision to deny a motion for mistrial is not reversed unless the circuit court abused its discretion. *Rodriguez v. State*, 2014 Ark. App. 660, at 11, 449 S. W.3d 306, 313.

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." Much of the argument in the present case focuses on United States Supreme Court decisions involving the Confrontation Clause and the necessity of witnesses when the

5

prosecution's case involves forensic reports.

In *Crawford v. Washington*, 541 U.S. 36, 59, (2004) the Court held that "[t]estimonial statements of witnesses absent from trial are admissible only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." Two subsequent cases, *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), and *Bullcoming v. New Mexico*, ___ U.S. ___, 131 S. Ct. 2705, 2710 (2011), involved the prosecution's introduction of forensic reports containing "a testimonial certification, made in order to prove a fact at a criminal trial." *Williams v. Illinois*, ___ U.S. ___, 132 S. Ct. 2221, 2223 (2012). The prosecution in *Melendez-Diaz* entered into evidence "certificates of analysis" to show that substances had been analyzed and were found to be cocaine; the certificates consisted of sworn affidavits by analysts who did not testify at trial. 557 U.S. at 308. The Court determined that the affidavits were testimonial, thereby implicating Melendez-Diaz's right of confrontation. *Id*. at 310–11. In *Bullcoming*, where the analyst who performed the tests was on unpaid leave for an unrevealed reason, and another analyst from the same lab testified about the tests, the Court held that "[t]he analysts who write reports that the prosecution introduces must be made available for confrontation." *Id*. at 2715.

In *Melendez-Diaz*, *supra*, the Court recognized the constitutionality of notice-and-demand statutes in states such as Arkansas requiring the prosecution to notify the accused of its intent to use an analyst's report as evidence at trial, after which the defendant is given a period of time to object to the admission of the evidence absent the analyst's appearance at trial. Arkansas Code Annotated section 12-12-313 (Supp. 2013), entitled

*Records as evidence—Analyst's testimony*, reads in relevant part:

> (d)(1) All records and reports of an evidence analysis of the laboratory shall be received as competent evidence as to the facts in any court or other proceeding when duly attested to by the analyst who performed the analysis.
>
> (2) The defendant shall give at least ten (10) days' notice prior to the proceedings that he or she requests the presence of the analyst of the laboratory who performed the analysis for the purpose of cross-examination.
>
> (3) Nothing in this subsection shall be construed to abrogate the defendant's right to cross-examine.

Appellant argues that, because he filed a timely notice "demanding the presence of all forensic analysts that tested the substance for the purpose of cross-examination," he had a Sixth Amendment right to confront the first chemist about his competency with the procedures, processing, and testing methods that he used. We agree with the State that there was no Confrontation Clause violation. The cases on which appellant relies are distinguishable.

In *Bullcoming*, a driving-while-intoxicated case, the prosecution introduced "a forensic laboratory report containing a testimonial certification—made for the purpose of proving a particular fact—through the in-court testimony of a scientist who did not sign the certification or perform or observe the test reported in the certification." ___ U.S. at ___ , 131 S. Ct. at 2710. The Court held that such "surrogate testimony"—concerning alcohol concentration in the accused's blood—did not meet the constitutional requirement of the Confrontation Clause. *Id.* "The accused's right is to be confronted with the analyst who made the certification, unless that analyst is unavailable at trial, and the accused had an opportunity, pretrial, to cross-examine that particular scientist." *Id.*

The prosecution in the present case introduced Galat's 2014 laboratory report into evidence and did not introduce the original laboratory report from Barr's analysis. Because the State did not seek to introduce Barr's report, there was no obligation to make him available for cross-examination.[2] Appellant's confrontation rights were satisfied by the opportunity to cross-examine Galat on the retesting that he performed. *See Melendez-Diaz*, 557 U.S. at 311, n.1 (rejecting the dissent's suggestion "that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case"). The circumstances surrounding Barr, whose absence was explained, and his laboratory report did not fall within the ambit of *Melendez-Diaz*, *Bullcoming*, or Arkansas Code Annotated section 12–12–313.

Appellant also argues that the circuit court abused its discretion by refusing to grant a mistrial following allegedly prejudicial statements by the prosecutor during rebuttal closing argument. Remarks in closing that require reversal are rare and must have appealed to jurors' passions. *Delatorre v. State*, 2015 Ark. App. 498. Furthermore, the State is permitted in rebuttal to comment on matters that were discussed or invited by the appellant's preceding closing argument. *Neble v. State*, 26 Ark. App. 163, 170, 762 S. W.2d 393, 397 (1988).

Appellant complains that he was prejudiced by the prosecutor's statements, "Why isn't [Barr] here? They didn't call him," because the jury was left with the incorrect impression that it was appellant's duty to secure Barr's presence at trial. He also argues that the trial court's

---

[2]We note that appellant declined the trial court's offer to redact the portion of Galat's report that referred to Barr's earlier analysis.

statement, "You have no burden of proof. But you are allowed to subpoena witnesses," incorrectly assigned the burden of producing witnesses for cross-examination to the appellant rather than to the State.

Appellant opened the door to the prosecutor's statements by referring to Barr multiple times in his closing statement, apparently attempting to show flaws in the chain of custody of the substance tested. Appellant noted Barr's initials on the bag of methamphetamine; he referred to the statement in Galat's report, "this is an amended report to reflect re-analysis, refer to original laboratory report, dated 12/26/2012"; and he characterized dates on the chain-of-custody log when Barr checked out the methamphetamine as "two unexplained periods of time." Finally, he argued that the prosecutor "will say don't worry about Mr. Barr or what happened to the evidence in 2012." As discussed earlier in this opinion, appellant had no constitutional right to cross-examine Barr. The trial court's statement that appellant had no burden of proof but was allowed to subpoena witnesses was a correct statement of law. *See Marks v. State*, 375 Ark. 265, 273, 289 S.W.3d 923, 929 (2008) (stating the fundamental principle of criminal law that the State has the burden of proving the defendant guilty beyond a reasonable doubt). A defendant is not entitled to rely on the State's subpoena or witness list for his own defense because the accused is not entitled to rely on discovery as a substitute for his own investigation. *Tatum v. State*, 2011 Ark. App. 80, at 8, 381 S.W.3d 124, 128.

The circuit court is given broad discretion to control counsel in closing arguments, and appellate courts do not interfere with such discretion absent a manifest abuse of it. *E.g.*, *Wetherington v. State*, 319 Ark. 37, 41, 889 S. W.2d 34, 36 (1994). The State is allowed to

9

"fight fire with fire" once the defendant has opened the door to a line of argument, and what might have been impermissible becomes permissible. *Lee v. State*, 326 Ark. 529, 532, 932 S.W.2d 756, 759 (1996). Here, the prosecutor addressed appellant's pointed references to Barr, responding that the State was not hiding anything by not calling him as a witness and that appellant could have subpoenaed him for questioning.

When there is doubt as to whether the trial court abused its discretion, a failure to request an admonition will negate a mistrial motion. *Martin v. State*, 2013 Ark. App. 110, at 9, 426 S.W.3d 515, 520. Although appellant moved for a mistrial, he never sought a jury admonition. We hold that the trial court did not abuse its discretion by denying appellant's motions for a mistrial.

II. *Whether the Trial Court Abused its Discretion by Admitting the Methamphetamine into Evidence*

Appellant argues that the circuit court abused its discretion by admitting the methamphetamine into evidence because the State failed to establish a chain of custody for the time that Barr handled it. We do not reverse a circuit court's ruling on the admissibility of evidence absent a showing that the court abused its discretion. *Jackson v. State*, 2010 Ark. App. 359, at 17–18, 374 S.W.3d 857, 868.

Authentication requirements are satisfied if the trial court, in its discretion, concludes that the evidence presented is genuine and that, in reasonable probability, it has not been tampered with or altered in any significant manner. *Chatmon v. State*, 2015 Ark. 28, 467 S.W.3d 731; *Guydon v. State*, 344 Ark. 251, 39 S.W.3d 767 (2001); *Crisco v. State*, 328 Ark. 388, 943 S.W.2d 582 (1997). Nor is it necessary that every possibility of tampering be

eliminated. *Crisco*, 328 Ark. 388, 943 S.W.2d 582. Minor uncertainties in the proof of chain of custody are matters to be argued by counsel and weighed by the jury, but they do not render the evidence inadmissible as a matter of law. *Hawkins v. State*, 81 Ark. App. 479, 481, 105 S.W.3d 397, 398 (2003). Proof of the chain of custody for interchangeable items like blood or drugs needs to be more conclusive than for other evidence. *Id.*

Appellant argues that any analyst who handles the actual substance is an indispensable witness, and that the State could not adequately establish the chain of custody of the methamphetamine without Barr's testimony. To the contrary, we have stated that it is not necessary that "every moment from the time the evidence comes into the possession of a law-enforcement agency until it is introduced at trial be accounted for by every person who could have conceivably come in contact with the evidence." *Jackson*, 2010 Ark. App. 359, at 17, 374 S.W.3d at 868.

Appellant alleges that the State failed to establish a proper chain of custody due to inconsistencies in Barr's handling of the methamphetamine. Appellant notes a lack of testimony about the time when Barr possessed the methamphetamine and about Barr's procedures when analyzing it. Appellant alleges that Barr altered the appearance of the methamphetamine during his analysis, that the weight of the methamphetamine varied between what was recorded by the DEA officers and what the two analysts recorded, and that there were inconsistencies between results of color tests in the field and in the laboratory.

In his testimony, Galat accounted for minor discrepancies in the weight and appearance of the methamphetamine between the time of its arrival at the laboratory and its introduction

into evidence at trial. Addressing the differences in weight—Barr reported a gross weight of 59.3 grams and a net weight of 27.9 grams, and Galat reported a gross weight of 60.8 grams and a net weight of 27.4 grams—Galat explained that Barr recorded a reserve weight ("what's left over") of 27.5 grams, meaning that he used .4 grams during testing. Thus, there was only a .1 gram difference in the reserve weight recorded by Barr and the net weight recorded by Galat. Galat also explained that the 1.5 gram difference between the gross weights he and Barr recorded occurred because, after Barr initially weighed the substance in its Ziploc bag and recorded the gross weight, he emptied the first bag and put it into a new Ziploc bag. Galat explained that the new bag, along with stickers on it, accounted for the gross-weight differences.

Galat also explained why Barr may have checked the methamphetamine out of the vault twice:

> [I]t's not uncommon for us to check out a piece of evidence and not analyze it and turn it back in. Because maybe you check out a piece of evidence, and then your boss wants you to work on this rush that's going to court the next week. So then you analyze this one and you don't get to that one, and you turn it back into the vault and you recheck it out . . . . So it's not a big mystery or anything.

He explained the many safeguards and layers of security in place at the laboratory to prevent misappropriation or substitution of drugs. He explained that, before he checked out the sealed bag of methamphetamine, he knew that Barr had previously tested the same substance: Barr created a report, his initials were on the sealed bag, and the chain–of–custody statement indicated the exact dates in November and December 2012 that Barr possessed the evidence.

Galat explained that Barr's 2012 report did not indicate specific tests he performed

because, in 2012, the laboratory had not yet switched to a newer computer system in which all analysts listed in their reports every test that was performed. Galat addressed appellant's allegation that Barr changed the appearance of the methamphetamine, explaining that Barr listed in his laboratory notes that he ground and sifted the methamphetamine during his analysis—just as Galat did—which Galat described as standard practice and not new.

Finally, appellant argues that different results between the color tests performed in the field and in the laboratory indicate a break in the chain of custody. He points to *Crisco v. State*, *supra*, where the substance was described differently by the undercover officer and the chemist, and the State was required to do more to establish the authenticity of the drug tested than merely trace the route of the envelope containing the substance. Appellant has failed to preserve this argument for appeal because it was not part of his chain-of-custody argument below as to the admission of the methamphetamine. Parties cannot change the grounds for an objection on appeal. *E.g.*, *Tavron v. State*, 372 Ark. 229, 231, 273 S. W.3d 501, 502 (2008).

The circuit court found that the State established by a reasonable probability that the evidence had not been tampered with. We find no abuse by the circuit court in admitting the methamphetamine into evidence over appellant's chain-of-custody arguments.

Affirmed.

GLADWIN, C.J., and HARRISON, J., agree.

*Jessica L. Carnes, P.A.*, by: *Jessica L. Carnes*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Kathryn Henry*, Ass't Att'y Gen., for appellee.