

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CR–15–566

| | | |
|---|---|---|
| MICHAEL HOWARD | | **Opinion Delivered** FEBRUARY 3, 2016 |
| | APPELLANT | |
| V. | | APPEAL FROM THE CRAWFORD COUNTY CIRCUIT COURT [NO. 17 CR–2012–379] |
| STATE OF ARKANSAS | | HONORABLE GARY COTTRELL, JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

### DAVID M. GLOVER, Judge

In March 2013, appellant Michael Howard pled guilty to being a felon in possession of a firearm. The circuit court suspended imposition of sentence for six years, conditioned on good behavior and payment of fines, court costs, and fees. In November 2014, the State filed a petition to revoke Howard's suspended sentence, alleging Howard had committed two counts of theft by receiving. After a hearing, Howard's suspended sentence was revoked, and he was sentenced to six years in the Arkansas Department of Correction. Howard now appeals the revocation of his suspended sentence, arguing the State violated his right to confront witnesses against him during the revocation hearing. We affirm.

At the revocation hearing, Detective Donald Eversole with the Van Buren Police Department testified that in August 2013, Chevrona Lewis filed a residential-burglary and theft-of-property report, reporting a television, PlayStation, some games, an iPad, an iPod, and some other items were missing from her residence. Lewis provided serial numbers for the

PlayStation, the iPod, and the iPad, and in October 2014, Eversole learned the serial number of the iPad had shown up as having been pawned at A and B Pawn Shop by Tuesday Howard, appellant's wife. When the State attempted to introduce the receipt for the iPad from A and B Pawn, Howard objected on the basis that it violated the Confrontation Clause because Eversole was not the person from the pawn shop; this objection was overruled. Eversole testified the iPad's serial number matched the one given by Lewis, and based on his conversations with Tuesday Howard, he was led to appellant, who first told Eversole he got the iPad from his wife's brother and then changed his story, stating that Lewis let him borrow the iPad so that he would not get into trouble with his wife (he and Lewis had met on a dating site and were seeing each other for a brief time). Eversole testified that Howard then came to the police station for an interview and again first told him the pawned iPad belonged to Tuesday's brother. He explained that Howard then changed his story, admitting he had Lewis's iPad but claiming Lewis had allowed him to borrow it to "cover his ass" with his wife so he could tell her that he was picking up his tablet from his cousin instead of admitting that he had been at Lewis's house.

Eversole further testified he continued to check Leads Online and found that a man named Christopher Willer had returned or sold the PlayStation matching Lewis's serial numbers to Game Traders; Game Traders provided a receipt showing Howard had originally sold the PlayStation to Game Traders. Howard again objected to the introduction of the Game Traders receipt based on violation of the Confrontation Clause, which was overruled. Eversole testified that, in a telephone interview with Howard, Howard told him Lewis

wanted to borrow $200 from him to move, which he loaned her, and he took the PlayStation as collateral. Howard said he tried to call Lewis after she moved but he had not heard from her.

Chevrona Lewis testified she knew Howard as Michael Smith; that he told her he was single; that her acquaintance with him lasted a month or less; that he had been to her residence one time during that period; that her home was burglarized in August 2013; that she did not suspect Howard in the burglary; that Howard texted her and told her not to call or text him again; and that her phone number was the same number it had been since 2005. Lewis denied she had given the iPad to Howard as a cover story. She also denied ever borrowing money from Howard or giving him the PlayStation as collateral for a loan; in fact, she testified it was Howard who asked to borrow money from her, which she declined to lend.

Howard renewed his objection to the pawn ticket from A and B Traders and the receipt from Game Traders, arguing that both were testimonial under the Confrontation Clause. These objections were denied, and the trial court revoked Howard's suspended sentence. Howard now brings this appeal.

In order to revoke probation or a suspension, the circuit court must find by a preponderance of the evidence that the defendant inexcusably violated a condition of that probation or suspension. *Holmes v. State*, 2012 Ark. App. 451. In a hearing to revoke, the burden is on the State to prove a violation of a condition of the suspended sentence by a preponderance of the evidence. *Stultz v. State*, 92 Ark. App. 204, 212 S.W.3d 42 (2005). On

appellate review, the trial court's findings are upheld unless they are clearly against the preponderance of the evidence. *Id.* Because of the lower burden of proof, evidence that is insufficient to support a criminal conviction may be sufficient for the revocation of a suspended sentence. *Knotts v. State*, 2012 Ark. App. 121. The appellate courts defer to the trial court's superior position to determine credibility and the weight to be accorded testimony. *Stultz, supra.*

Howard argues that the pawn ticket and the Game Traders receipt were testimonial in nature in violation of the Confrontation Clause. Although the rules of evidence, including the hearsay rule, are not strictly applicable in revocation proceedings, the right to confront witnesses is applicable. *Caswell v. State*, 63 Ark. App. 59, 973 S.W.2d 832 (1998). The Confrontation Clause applies to "witnesses" who "bear testimony" against the accused, with testimony typically being "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Crawford v. Washington*, 541 U.S. 36, 51 (2004). "Testimonial statements of witnesses absent from trial are admissible only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Raquel-Dieguez v. State*, 2015 Ark. App. 626, at 6, ___ S.W.3d ___, ___ (citing *Crawford v. Washington*, 541 U.S. 36, 59 (2004)). In *Crawford*, the Supreme Court held that a "core class" of "testimonial" statements exists that include

> ex parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; statements that were made under circumstances which would lead an objective witness

SLIP OPINION

reasonably to believe that the statement would be available for use at a later trial. *Crawford*, *supra*, at 51–52.

In support of his argument that the trial court violated his right to confront witnesses by allowing the pawn ticket and the Game Traders receipt into evidence, Howard cites *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009). In that case, the Supreme Court held the admission of sworn affidavits from laboratory analysts reporting that the forensic analysis of material seized by police from the defendant was cocaine, without requiring the analysts to appear in court and testify in person, was a violation of the Confrontation Clause, absent a showing that the analysts were unavailable to testify at trial and that the defendant had a prior opportunity to cross-examine them.

The case at bar is distinguishable from the laboratory analysts' sworn affidavits in *Melendez-Diaz*. Here, the pawn ticket and the Game Traders receipt were not sworn affidavits that fall into the category of "testimonial statements," as in *Melendez-Diaz*. They are not statements at all, sworn or otherwise. Instead, they were the product of information gathered by Detective Eversole, who was available to be cross-examined. Neither of those items were testimonial in nature; therefore, there was no Confrontation Clause violation.

Even had the trial court erred, we would still affirm. A Confrontation Clause violation is subject to harmless-error analysis. *Roston v. State*, 362 Ark. 408, 208 S.W.3d 759 (2005). Whether a Confrontation Clause violation is harmless error depends on a variety of factors, including the importance of the witness's testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting

the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and the overall strength of the prosecution's case. *Green v. State*, 2015 Ark. App. 291, 461 S.W.3d 731.

Here, the State introduced a video-taped interview and an audio recording of a telephone interview with Howard. In the video-taped interview, Howard stated that Lewis had given him her iPad to "cover his ass" with his wife. However, Lewis denied loaning Howard the iPad to use as a cover story. In the telephone interview, Howard stated Lewis gave him the PlayStation to hold as collateral for a $200 loan he made to her; Lewis also denied she had borrowed any money from Howard or had given him her PlayStation as collateral. Howard's own statements place both the iPad and the PlayStation in his possession, and the trial court did not believe his version of events, finding Lewis's testimony was more credible than Howard's. Therefore, the pawn receipt and the game store receipt were cumulative to Howard's admission that he had possession of both the iPad and the PlayStation, and if there had been error, it would have been harmless.

Affirmed.

VIRDEN and KINARD, JJ., agree.

*Lisa-Marie Norris*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Evelyn D. Gomez*, Ass't Att'y Gen., for appellee.