Cite as 2021 Ark. App. 23

# ARKANSAS COURT OF APPEALS
DIVISION II
**No.** CR-20-277

| | | |
|---|---|---|
| CARMEN TYLER | | **OPINION DELIVERED:** JANUARY 20, 2021 |
| | APPELLANT | APPEAL FROM THE CRAIGHEAD COUNTY CIRCUIT COURT, WESTERN DISTRICT [NO. 16JCR-17-361] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE JOHN W. LANGSTON, JUDGE |
| | APPELLEE | AFFIRMED |

## ROBERT J. GLADWIN, Judge

Carmen Tyler appeals the revocation of her probation in the Craighead County Circuit Court, which found that she had violated her probation conditions by committing theft. She argues that the circuit court erred when it allowed testimony that violated her right to confront and cross-examine adverse witnesses and that the State offered insufficient proof about the theft's timing. We affirm.

### I. *Facts*

On April 6, 2017, Tyler was charged with two counts of second-degree forgery as a result of allegations that she had stolen two checks from her employer and that she had forged and cashed them. On October 2, 2017, Tyler was sentenced to sixty months' probation based on a negotiated guilty plea. Her probation was subject to conditions, which included that she not commit a criminal offense punishable by imprisonment and that she pay supervision fees, fines, and restitution. On February 26, 2018, the State filed a petition

to revoke Tyler's probation, and it alleges:

> TYLER has failed to live a law-abiding life and was charged with allegedly committing new crimes in Craighead County on December 12, 2017, for Theft (>$25,000); and, TYLER has a balance of $4,191.24 due to the Craighead County Sheriff's Office for restitution, fines and court costs, having been charged with committing theft, and that she had a balance of $4,191.24 due to the Craighead County Sheriff's Office for restitution, fines, and court costs.

On January 15, 2020, a hearing was held on the State's revocation petition. Tommye McNamara testified that she had hired Tyler through Care.com to work as a housekeeper. She said that Tyler had access to the entire house and that she had worked weekly. Ms. McNamara testified that on December 5, 2017, during the period of Tyler's employment, she realized that her jewelry was missing and that she contacted the police. She said that she had told the officers that the jewelry had been stolen sometime in the six months before December 5, 2017. Before Tyler's employment, Ms. McNamara had two workers who had access to her house, but no one else did because Ms. McNamara was taking chemotherapy treatments. She said that the two other women had worked for about a month each before she hired Tyler and that she never saw Tyler or the other women take anything. Ms. McNamara said that she recovered three pieces of her jewelry from United Pawn and that she had to pay $300 for it.

Jonesboro Police detective Chad Hoggard testified that he investigated the case and that Tyler had been a house cleaner for the McNamaras. He said that in theft allegations such as these, he always checks for the suspects on Leads Online, which is a national database for pawnshop records that includes all records of pawnshop buys, and he found several "hits" of Tyler pawning jewelry. When Detective Hoggard affirmed that Leads Online is a record made by the pawnshop of the sale date, address of the seller, and the item that is pawned,

2

defense counsel raised an objection based on a lack of foundation for Hoggard's knowledge. The circuit court ruled that defense counsel could voir dire the witness but that the State could finish its line of questioning first.

Detective Hoggard said that he had corroborated the information from Leads Online with the merchants. Defense counsel objected to "anything about corroborating with the merchant as outside the Confrontation Clause." The circuit court allowed defense counsel to voir dire the witness. Thereafter, the court ruled, "As to the question about him corroborating with the pawnshop, I'm going to sustain that, but the rest of it's overruled. It appears to be information upon which the officer acted. So you may proceed, sir."

Detective Hoggard was shown four documents, and he said the documents are tickets from Leads Online, the pawnshop records of what the shops buy or people pawn with the description of the item and the address of the person selling it. When Detective Hoggard was asked if the address was the same on all four of the tickets, defense counsel objected arguing that the witness was "reading off of a piece of paper," and if the paper was being offered into evidence, counsel wished to object before anything was read from it. The State affirmed that it was seeking admission of the evidence, and defense counsel argued that the Leads Online tickets were testimonial in nature, subject to the Confrontation Clause, and were hearsay. The circuit court overruled the objection and noted that the objection was continuing.

Detective Hoggard testified that the addresses on the documents were all similar.[1] The dates reflected that the pawns occurred on November 3 and 20, 2017, and the items listed are a silver and turquoise ring, bracelets, and gold earrings. The circuit court received the documents over defense's objection, which was renewed.

Detective Hoggard testified that he interviewed Tyler, who told him that she took the jewelry and pawned it because her son was going on a vacation with a friend to Florida and that he needed money for things for that trip. On cross-examination, he said that Tyler did not tell him when she took the property but that it was while she was working for the McNamaras. On redirect examination, he stated that Tyler pawned the jewelry in November 2017.

Becky Mahan testified that she works at the Craighead County Sheriff's Department. Defense counsel objected to any testimony from her because the State did not plead in the revocation petition any allegation of failure to pay fines or costs. The circuit court sustained the objection, and the State rested its case.

The defense rested its case and moved for a directed verdict. Defense counsel argued that Tyler was placed on probation on October 2, 2017, and that the State did not prove when the items were stolen—Ms. McNamara said that the items had been taken within the six months before December 2017. Defense counsel argued that the items could have therefore been taken before Tyler was placed on probation, probation cannot be revoked for actions that occurred before probation begins, and it did not matter when the police

---

[1]Two of the documents were withdrawn from consideration because the transaction dates were before Tyler had been placed on probation.

discovered the theft. The circuit court denied the motion. Thereafter, both parties made closing arguments relating to the proof in regard to the timing of the theft.

The circuit court found that Tyler was guilty of violating the terms of her probation and sentenced her to three years in the Arkansas Division of Community Correction followed by three years' suspended imposition of sentence. Tyler filed a timely notice of appeal, and this appeal followed.

## II. *Standard of Review*

Pursuant to Arkansas Code Annotated section 16-93-308(d) (Supp. 2019), a circuit court may revoke a defendant's probation at any time prior to the expiration of the period of probation if the court finds by a preponderance of the evidence that the defendant has inexcusably failed to comply with a term or condition of the defendant's probation. The State bears the burden of proving a violation of a term or condition by a preponderance of the evidence. *Honeycutt v. State*, 2020 Ark. App. 449, at 4, 608 S.W.3d 631, 634.

On appeal, we uphold the circuit court's findings unless they are clearly against the preponderance of the evidence. *Id*. We need proof of only one violation of the conditions of probation or suspended imposition of sentence to support a revocation, and evidence that is insufficient for a criminal conviction may be sufficient for a revocation proceeding because the burdens of proof are different. *Id*. Because a determination of the preponderance of the evidence turns heavily on questions of credibility and weight to be given to the testimony, the appellate courts defer to the circuit court's superior position in this regard. *Id*.

III.  *Confrontation Clause*

Regarding the confrontation of witnesses in revocation proceedings, this court has stated,

> In a probation revocation proceeding the trial court must balance the probationer's right to confront witnesses against grounds asserted by the State for not requiring confrontation. *United States v. Bell*, 785 F.2d 640 (8th Cir. 1986). First, the court should assess the explanation the State offers of why confrontation is undesirable or impractical. *Id*. at 643. A second factor that must be considered, and one that has been focused on by a number of courts, is the reliability of the evidence which the government offers in place of live testimony. *Id*. at 643.

*Goforth v. State*, 27 Ark. App. 150, 152, 767 S.W.2d 537, 538 (1989).

Tyler argues that she invoked the protections of the Confrontation Clause when Detective Hoggard testified about information he received from the website Leads Online. She contends that this evidence was testimonial in nature as it accused her of pawning jewelry on certain dates and should have been precluded pursuant to *Crawford v. Washington*, 541 U.S. 36 (2004).[2]  As such, Tyler argues that it was an error for the circuit court to allow this testimony without conducting a *Goforth* analysis by weighing Tyler's right to confront witnesses against any good cause for not allowing confrontation. She contends that the State did not offer any good cause for prohibiting confrontation, and the circuit court did not conduct the required analysis.

As argued by the State, this court has held that pawn tickets from Leads Online are not sworn affidavits and do not fall into the category of "testimonial statements."  *Howard*

---

[2]Tyler fails to explain her reliance on this case, but we note that in *Crawford*, the United States Supreme Court held that a prerecorded statement to police was inadmissible because the person making the statement did not testify at trial and was not subject to cross-examination.

*v. State*, 2016 Ark. App. 69, 482 S.W.3d 741.  In *Howard*, the appellant argued that pawn tickets had been admitted in violation of the Confrontation Clause, and we reasoned,

> Although the rules of evidence, including the hearsay rule, are not strictly applicable in revocation proceedings, the right to confront witnesses is applicable. *Caswell v. State*, 63 Ark. App. 59, 973 S.W.2d 832 (1998). The Confrontation Clause applies to "witnesses" who "bear testimony" against the accused, with testimony typically being "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Crawford v. Washington*, 541 U.S. 36, 51, (2004). "Testimonial statements of witnesses absent from trial are admissible only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Raquel-Dieguez v. State*, 2015 Ark. App. 626, at 6, 475 S.W.3d 585, 589 (citing *Crawford v. Washington*, 541 U.S. 36, 59 (2004)). In *Crawford*, the Supreme Court held that a "core class" of "testimonial" statements exists that include
>
> > ex parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.
>
> *Crawford*, *supra*, at 51–52.

*Howard*, 2016 Ark. App. 69, at 4–5, 482 S.W.3d at 744–45.

This court held in *Howard* that the pawn tickets at issue were not sworn affidavits but the product of information gathered by the investigator, who was available to be cross-examined.  *Id*. at 5, 482 S.W. 3d at 745.  Accordingly, *Howard* is the controlling precedent on this issue, and we hold that the circuit court committed no error by admitting the Leads Online tickets.  Having held that no error occurred, we do not address the State's alternative harmless-error argument.

IV. *Sufficiency of the Evidence*

A person commits theft of property if he or she knowingly takes or exercises unauthorized control over the property of another person with the purpose of depriving the owner of the property. Ark. Code Ann. § 5-36-103(a)(1) (Repl. 2013). Tyler argues that insufficient evidence supports the revocation. She contends that Ms. McNamara could identify a six-month window for when her jewelry might have been taken, and that she worked for Ms. McNamara beginning September 2017. Detective Hoggard testified that Tyler admitted taking items from Ms. McNamara's house, but he did not ascertain a specific date that the items were taken. Tyler asserts that she was not placed on supervised probation until October 2, 2017, which leaves a period in which the jewelry may have been taken before Tyler was placed on probation. She argues that the State bears the burden of proof, and it cannot prove that the jewelry was taken while Tyler was on supervised probation.

The State contends that as part of Tyler's probation, she was to live a law-abiding life. The detective testified that Tyler admitted she had taken the jewelry from Ms. McNamara and sold it to a pawnshop. Detective Hoggard testified that Tyler pawned the jewelry in November 2017. The circuit court found Detective Hoggard credible, and we defer to the circuit court's superior position in this regard. *Honeycutt*, *supra*. Accordingly, we hold that the revocation was not clearly against the preponderance of the evidence.

Affirmed.

MURPHY and BROWN, JJ., agree.

*Terry Goodwin Jones*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Michael L. Yarbrough*, Ass't Att'y Gen., for appellee.

8