Cite as 2022 Ark. App. 352

# ARKANSAS COURT OF APPEALS

DIVISION III

No. CR-21-407

| | |
|---|---|
| TAYLOR MILLER | **Opinion Delivered** September 21, 2022 |
| APPELLANT | APPEAL FROM THE CRAWFORD COUNTY CIRCUIT COURT |
| V. | [NOS. 17CR-17-509; 17CR-17-1067; 17CR-17-1295; 17CR-18-19; 17CR-18-975; 17CR-19-75; 17CR-19-59] |
| STATE OF ARKANSAS | |
| APPELLEE | HONORABLE MICHAEL MEDLOCK, JUDGE |
| | REVERSED AND REMANDED IN PART; AFFIRMED IN PART |

## WAYMOND M. BROWN, Judge

Appellant Taylor Miller appeals from the March 17, 2021 order of the Crawford County Circuit Court revoking his suspended sentences and probation. On appeal, Miller argues the circuit court (1) lacked jurisdiction to revoke his suspended sentences because the underlying suspended sentences were illegal, (2) violated his Confrontation Clause rights, and (3) erred in revoking his probation and suspended sentences without proof of written conditions. Because we agree that Miller's underlying suspended sentences were not authorized by law, we reverse and remand to the circuit court for correction of the illegal sentences; we affirm as to all remaining issues on appeal.

On March 14, 2018, Miller entered a negotiated plea of guilty to the following offenses:

- Case No. 17CR-18-19: Possession of drug paraphernalia, Class B felony; and possession of methamphetamine, Class D felony.

- Case No. 17CR-17-1295: Failure to appear, Class C felony.
- Case No. 17CR-17-1067: Theft by receiving, Class C felony; criminal mischief 1st degree, Class C felony; and possession of drug paraphernalia, Class D felony.
- Case No. 17CR-17-509: Possession of methamphetamine, Class D felony; and possession of drug paraphernalia, Class D felony.

Miller received thirty-six months' probation for each of the charges, with all of the probationary periods to run concurrently. Miller's probation was conditioned on compliance with certain written terms and conditions of good behavior. He was also ordered to pay fines, costs, and fees.

On October 17, 2018, the State filed a petition to revoke Miller's probation in the aforementioned cases for failing to report for drug testing, failing to pay fees, and committing new offenses. Specifically, in new case No. 17CR-18-975, Miller was charged with one count each of possession of methamphetamine and possession of marijuana and two counts of possession of drug paraphernalia, all as a habitual offender.

On March 25, 2019, Miller entered a plea of guilty to the following offenses:

- Case No. 17CR-19-75: Failure to appear, Class C felony.
- Case No. 17CR-19-59: Failure to appear for revocation hearing, Class D felony.
- Case No. 17CR-18-975: Possession of methamphetamine, Class D felony; possession of marijuana, Class A misdemeanor; and two counts of possession of drug paraphernalia, Class D felony.

As a habitual offender, Miller was sentenced to an aggregate sentence of six years' incarceration in a regional correctional facility plus an additional ten years' suspended sentence conditioned on good behavior. Specifically, in the preceding cases, Miller was sentenced to the following: In case No. 17CR-19-75, 120 months' suspended sentence for failure to appear; in case No. 17CR-19-59, 120 months' suspended sentence for failure to appear for revocation hearing; in case No. 17CR-18-975, 72 months' incarceration and 108 month's' suspended sentence for

2

possession of methamphetamine, 120 months' suspended sentence for possession of drug paraphernalia, 12 months' suspended sentence for a second count of possession of drug paraphernalia; and 12 months' suspended sentence for possession of marijuana. The petition to revoke filed on October 17, 2018, was withdrawn due to a plea. A sentencing order to this effect was entered on April 4, 2019.

On July 24, 2020, the State filed a petition to revoke Miller's probation and suspended sentences in all seven cases set forth above, alleging that on July 7, he committed a new offense of first-degree battery, Class B felony, and charged as a habitual offender in violation of the terms and conditions of his suspended sentences.

On February 5, 2021, a revocation hearing was held, during which Miller argued that his sentences in case Nos. 17CR-19-75 and 17CR-19-59 were illegal because he was sentenced to a suspended sentence as a habitual offender. Additionally, Miller argued that his sentence in case No. 17CR-18-975 was also illegal because, while he was sentenced as a habitual offender to six years' incarceration plus nine years' suspended imposition of sentence for the possession of methamphetamine charge, he received only a suspended sentence on the remaining charges in the case. He argued that the appropriate remedy was to resentence him to a term of six years' incarceration, which he had already served in case No. 17CR-18-975, and to remove the suspended sentences because he believed the "State's intent was for him to serve that six years on all those cases." In response, the State conceded that in case Nos. 17CR-19-75 and 17CR-19-59, in which Miller was sentenced as a habitual offender to terms of suspended sentences only, the sentences were not authorized by law, and he would have to be resentenced. Specifically, the State urged the circuit

3

court to resentence Miller to six years' incarceration, with credit for time served, and apply the remaining time as a suspended imposition of sentence.

At the March 5, 2021 sentencing hearing, the circuit court found proof that a violation of Miller's probation conditions had occurred. Ultimately, Miller was sentenced as follows:

- Case No. 17CR-18-19: 240 months' incarceration for possession of drug paraphernalia, Class B felony; and 72 months' suspended sentence for possession of methamphetamine, Class D felony.
- Case No. 17CR-17-1295: 120 months' incarceration for failure to appear, Class C felony.
- Case No. 17CR-17-1067: 120 months' suspended sentence for theft by receiving, Class C felony; 120 months' suspended sentence for criminal mischief 1st degree, Class C felony; and 72 months' suspended sentence for possession of drug paraphernalia, Class D felony.
- Case No. 17CR-17-509: 72 months' suspended sentence for possession of methamphetamine, Class D felony; and 72 months' suspended sentence for possession of drug paraphernalia, Class D felony.
- Case No. 17CR-19-75: 120 months' incarceration and 120 months' suspended sentence for failure to appear, Class C felony.
- Case No. 17CR-19-59: 72 months' suspended sentence for failure to appear for revocation hearing, Class D felony.
- Case No. 17CR-18-975: 72 months' suspended sentence for possession of methamphetamine, Class D felony; 72 months' suspended sentence for possession of drug paraphernalia, Class D felony.

In case Nos. 17CR-19-75 and 17CR-18-975, Miller was sentenced as a habitual offender. The remaining cases received no habitual-offender designation or enhancement. The circuit court ordered all sentences to be served concurrently, with an aggregate total time to be served of 240 months' incarceration.

In Arkansas, sentencing is entirely a matter of statute and must be in accordance with the statute in effect at the time the crime was committed.[1] When a defendant is charged and sentenced

---

[1]*Walden v. State*, 2014 Ark. 193, 433 S.W.3d 864.

as a habitual offender with two or more prior felony convictions, that defendant may not be sentenced to probation or a suspended imposition of sentence.[2]  Upon revocation of a suspended sentence or probation, the circuit court may impose any sentence that could have been originally imposed on the defendant for the offense.[3]  If an original sentence is illegal, it may be corrected at any time, even if it has been partially executed.[4]  The remedy for an illegal sentence is not dismissal of all the proceedings, which would allow the appellant to benefit from the failure to correct the sentence in the first place.[5]  Rather, the remedy is either to reverse and remand to the circuit court for resentencing or for the appellate court to correct the sentence.[6]

On appeal, Miller first argues that the circuit court lacked jurisdiction to revoke his suspended sentences in case Nos. 17CR-19-75, 17CR-19-59, and 17CR-18-975 because the underlying suspended sentences were illegal.  As noted above, on April 4, 2019, following a plea of guilty, a sentencing order was entered in which Miller was sentenced as a habitual offender to 120 months' suspended sentences in both case Nos. 17CR-19-75 and 17CR-19-59.  In case No. 17CR-18-975, with regard to the possession-of-drug-paraphernalia charge, Miller was sentenced as a habitual offender to 120 months' suspended sentence.  The State again concedes, and we agree, that because

---

[2]Ark. Code Ann. § 5-4-301(a)(2) (Supp. 2021).

[3]Ark. Code Ann. § 16-93-308(g)(1)(a) (Supp. 2021).

[4]*Limbocker v. State*, 2016 Ark. 415, 504 S.W.3d 592.

[5]*Bangs v. State*, 310 Ark. 235, 835 S.W.2d 294 (1992).

[6]*State v. Webb*, 373 Ark. 65, 281 S.W.3d 273 (2008).

Miller was sentenced as a habitual offender to suspended sentences only, the sentences are not in accordance with statute. While, due to revocation, these are not the sentences Miller is currently serving, because the initial suspended sentences were illegal, these cases must be remanded for resentencing with credit given for any time already served.

Miller next contends that his right to confront witnesses was violated several times throughout the probation-revocation hearing.

Generally, a defendant in a revocation hearing is not entitled to the full panoply of rights that attend a criminal prosecution, but he or she is entitled to due process.[7] As we recognized in *Goforth*, the United States Supreme Court has held that a defendant is entitled to the right to confront and cross-examine adverse witnesses unless good cause is shown for not allowing confrontation.[8] This holding is codified at Arkansas Code Annotated section 16-93-307(c)(1),[9] which states that "[t]he defendant has the right to counsel and to confront and cross-examine an adverse witness unless the court specifically finds good cause for not allowing confrontation[.]" According to *Goforth*, the circuit court must balance the probationer's right to confront witnesses against grounds asserted by the State for not requiring confrontation.[10] First, the court should assess the explanation offered by the State

---

[7]*Goforth v. State*, 27 Ark. App. 150, 767 S.W.2d 537 (1989).

[8]*Id.*

[9](Repl. 2016).

[10]*Goforth*, s*upra*.

6

for why confrontation is undesirable or impractical.[11]  A second factor that must be considered is the reliability of the evidence that the State offers in place of live testimony.[12]

First, Miller argues that his right to confrontation was violated when the State attempted to elicit testimony from Sergeant Christopher Ho regarding Michaela Householder's relationship to Miller and what Sergeant Ho learned from interviewing Michaela.  Miller's counsel objected, stating that the testimony is testimonial hearsay and that Miller has a Sixth Amendment right to confront his accuser or any witnesses.  The circuit court sustained the objection.  On appeal, Miller challenges the State's failure to provide an explanation for the absence of key witnesses.  Importantly, the attempt to elicit the testimony was unsuccessful; therefore, it did not violate Miller's right to confront a witness against him.  When an objection is sustained and the defendant has received all the relief requested, there is no basis to raise the issue on appeal.[13]

Next, Miller points to his objection to the admission into evidence of a video clip depicting the incident.  He argued,

> Your Honor, I'm going to object.  I don't believe the State has laid a proper foundation.  Detective Marsh didn't testify whether or not Mr. Newberry even took this video.  It's — it's — while it's content may be accurate its source is suspect and it also — we don't have — without the person that actually made the video we don't have the opportunity under the 6th Amendment to testify or to cross examine the witness who made the video.  It's testimonial in nature and we'd ask it be excluded.

The objection was overruled, and the brief video clip was played.

---

[11]*Id*.

[12]*Id*.

[13]*Leaks v. State*, 339 Ark. 348, 5 S.W.3d 448 (1999).

Miller contends that he had no opportunity to cross-examine the individual who recorded the video of the incident, and the State offered no explanation for not calling the individual as a witness. He argues that, instead, the State relied on the testimony of two police officers who did not witness the altercation. The Confrontation Clause applies to witnesses who bear testimony, defining testimony as generally being "a solemn declaration or affirmation made for the purpose of establishing or proving some fact."[14]

In *Howard v. State*,[15] this court held that a pawn ticket and store receipt were not statements but, instead, were the product of information gathered by an investigating officer, who was available for cross-examination; hence, there was no violation of the right to confront witnesses. The same rationale holds true in this case. The video clip was not testimonial because the investigating officer, Sergeant Ho, introduced the video into evidence and was available for cross-examination.

Miller also takes issue with Brashears, the victim, not being present at the hearing and not being made available for cross-examination at trial. He argues that the State failed to provide an explanation for the absence of key witnesses, especially "the individual Miller was accused of committing battery against." Miller asserts that the error was not harmless because he had no opportunity to cross-examine the victim. A defendant's right to confront witnesses who testify does not compel the State to produce every possible witness.[16] Miller cites no authority for his contention

---

[14]*Crawford v. Washington*, 541 U.S. 36 (2004).

[15]2016 Ark. App. 69, 482 S.W.3d 741.

[16]*Caldwell v. State*, 2018 Ark. App. 588, 565 S.W.3d 539.

8

that a victim must testify. Here, the State was able to prove its case without the victim's testimony. Accordingly, we find no violation of Miller's Confrontation Clause rights.

Last, Miller argues that the circuit court erred when it revoked his probation and suspended sentences without proof of written conditions. Relying on *Ross v. State*,[17] Miller asserts that courts lack the authority to imply conditions and subsequently revoke a defendant's probation on conditions that were not expressly communicated in writing to a defendant. While Miller appears to argue on appeal that the State failed to admit into evidence the written conditions of his suspended sentence, this is not the argument he made below. An argument that the State failed to introduce a copy of the conditions of a probation or suspended sentence is a procedural objection that must be raised before the circuit court.[18] Before the circuit court, Miller argued "the State has not proven that Mr. Miller is on a suspended imposition of sentence or probation. It's not been entered into evidence and so we'd ask to dismiss the petition." That is not the same argument he now makes. Below, Miller challenged the proof as to whether he was even on probation or a suspended sentence. On appeal, he asserts the State failed to submit evidence of the written conditions of his suspended sentence. Consequently, his argument is not preserved for review.

Addressing Miller's contention that the circuit court lacked jurisdiction to revoke his suspended sentence in the cases where the State withdrew its original revocation petition pursuant to his April 4, 2019 plea, we find no merit. The State initially moved to revoke his suspended sentences in case Nos. 17CR-17-509, 17CR-17-1067, 17CR-17-1295, and 17CR-18-19. As part of

---

[17]268 Ark. 189, 594 S.W.2d 852 (1980).

[18]*Butry-Weston v. State*, 2021 Ark. App. 51, 616 S.W.3d 685.

9

a plea agreement, the State withdrew the revocation petition as to those cases and sentenced him to serve seventy-two months incarceration in case No. 17CR-18-975. Arkansas Code Annotated section 5-4-104(e)(3)[19] provides:

> (A) The court may sentence the defendant to a term of imprisonment and suspend imposition of sentence as to an additional term of imprisonment.

> (B) However, the court shall not sentence a defendant to imprisonment and place him or her on probation, except as authorized by § 5-4-304.

If, upon revocation, an extension of suspension or probation is made, the court is not deprived of the ability to revoke such suspension or probation again should the defendant's conduct so warrant.[20]

Miller argues that because his suspended sentences were not extended by the April 4, 2019, sentencing order, the circuit court erred in later revoking it in the cases where the State had previously withdrawn its petition to revoke. We find Miller's argument wholly unpersuasive. There is no authority, nor does Miller provide any, that states that the filing and subsequent withdrawal of a revocation petition terminates the suspended sentence or deprives the circuit court of jurisdiction to later revoke those suspended sentences unless an order is entered extending the suspended sentence. The suspended sentences remained in effect without further action from the circuit court. On March 18, 2018, Miller was placed on probation for thirty-six months in case Nos. 17CR-17-509, 17CR-17-1067, 17CR-17-1295, and 17CR-18-19. That time had not run, and he was still on probation, when the July 24, 2020 revocation petition was filed. Therefore, we affirm on this point.

---

[19](Supp. 2021).

[20]*Moseley v. State*, 349 Ark. 589, 80 S.W.3d 325 (2002).

For the reasons stated herein, we reverse and remand to the circuit court for correction of the illegal sentences in case Nos. 17CR-19-75, 17CR-19-59, and 17CR-18-975. We affirm as to the remaining issues on appeal.

Reversed and remanded in part; affirmed in part.

VAUGHT and MURPHY, JJ., agree.

*Laura Avery*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Adam Jackson*, Ass't Att'y Gen., for appellee.