Jerry HAWKINS *v.* STATE of Arkansas

CA CR 02-169 105 S.W.3d 397

Court of Appeals of Arkansas
Divisions I, II, and IV
Opinion delivered April 23, 2003

*David Mark Gunter*, Public Defender, for appellant.

*Mark Pryor*, Att'y Gen., by: *Katherine Adams*, Ass't Att'y Gen., for appellee.

K AREN R. BAKER, Judge. A jury in Hempstead County Circuit Court convicted appellant, Jerry Hawkins, of delivery of a controlled substance, cocaine. He was sentenced to ten years' imprisonment in the Arkansas Department of Correction and fined $10,000. On appeal, he asserts that the trial court erred when it overruled his objection to the admission of State's exhibit two, crack cocaine, in that the State failed to establish a chain of custody by not showing with reasonable probability that the evidence had not been altered. We affirm.

Officer David Jones testified that on September 26, 2000, he was working undercover when he approached appellant. He stated to appellant that he was "trying to score [him] a rock." Appellant replied, "Well, I can help you out." The officer handed appellant thirty dollars, and appellant soon returned with two rocks of crack cocaine. The officer placed the substance into a brown envelope, initialed it, and sealed it. At that time, he carried the evidence to lock-up at the South Central Drug Task Force office. It was then delivered to the State Crime Lab by Chief Investigator Linda Card.

Chemist Roy Adams testified that the evidence seemed to be in the same condition as when the lab received it. He described the evidence as "one plastic bag (which I'm talking about the plastic bag inside it) containing one white-off-white, rock-like substance." Both the chemist and the officer identified the brown envelope as State's exhibit one, and the crack cocaine as State's exhibit two. Upon the prosecution's attempt to offer State's exhibit one and two into evidence, defense counsel objected. The objection was based on chain of custody. The trial judge overruled the objection to the introduction of the exhibit. The evidence was admitted as a result. Ultimately, appellant was found guilty, sentenced, and fined. This appeal followed.

 The purpose of establishing a chain of custody is to prevent the introduction of evidence that has been tampered with or is not authentic. *Guydon v. State*, 344 Ark. 251, 39 S.W.3d 767 (2001). The trial court must be satisfied within a reasonable probability that the evidence has not been tampered with, but it is not necessary for the State to eliminate every possibility of tampering. *Crisco v. State*, 328 Ark. 388, 943 S.W.2d 582 (1997). Minor uncertainties in the proof of chain of custody are matters to be argued by counsel and weighed by the jury, but they do not render the evidence inadmissible as a matter of law. *Id.*; *Guydon, supra.* Proof of the chain of custody for interchangeable items like blood or drugs needs to be more conclusive than for other evidence. *Crisco, supra.* On review, the appellate court will not reverse a ruling regarding the admission of evidence absent an abuse of discretion because such matters are left to the sound discretion of the trial court. *Guydon, supra.*

Appellant asserts that the trial court erred when it overruled his objection to the admission of the crack cocaine in that the State failed to establish a chain of custody by not showing with reasonable probability that the evidence had not been altered. The State, on the other hand, asserts that any minor uncertainties with the chain of custody went only to the weight of the evidence.

In *Crisco, supra,* our supreme court held that the trial court abused its discretion by receiving a substance into evidence that was not properly authenticated. *Crisco* is distinguishable from the facts presented in this case. In *Crisco*, the police officer described it as an "off-white powder substance" and the forensic chemist's description varied significantly, describing it as "one triangular piece of plastic containing a tan rock-like substance." 328 Ark. at 392, 943 S.W.2d at 584. The court in *Crisco* stated that:

> In the case before us, Crisco hinges his contention of lack of authenticity on the fact that Officer Hanes's description of the drugs differed significantly from that of the chemist, Michael Stage, in color and consistency. In fact, the chemist admitted that he would not have described the substance as off-white powder. Crisco's point has merit. True, there was no obvious break in the chain of custody of the envelope containing the plastic bag or conclusive proof that any tampering transpired. Yet, the

marked difference in the description of the substance by Officer Hanes and the chemist leads us to the conclusion that there is a significant possibility that the evidence tested was not the same as that purchased by Officer Hanes. This is especially so when we consider that the drug involved is a readily interchangeable substance. Under these circumstances, where the substance at issue has been described differently by the undercover officer and the chemist, we believe the State was required to do more to establish the authenticity of the drug tested than merely trace the route of the envelope containing the substance.

*Id.* at 393, 943 S.W.2d at 585 (citations omitted).

However, in *McChristian v. State*, 70 Ark. App. 514, 20 S.W.3d 461 (2000), this court distinguished *Crisco* and affirmed the trial court's admission of the evidence. In *McChristian*, we stated:

Here, the substance in question was identified by the officer who retrieved it as "six rocks" of what appeared to be crack cocaine, while the chemist's report described it as "a hard off-white rock-like substance." While in the *Crisco* case there was a difference in descriptions of the color and texture of the substance (white powder substance versus tan rock-like substance), here the difference is only in a specific number of rocks versus a reference to "a hard off white rock-like substance." We view differences in these descriptions, at most, as conflicts in evidence properly weighed by the finder of fact rather than as a failure to prove the authenticity of the cocaine. Furthermore, there were no allegations of tampering. Thus, the State sufficiently established the chain of custody. It is not necessary that the State eliminate every possibility of tampering; instead, the trial court must be satisfied that in all reasonable probability the evidence has not been tampered with.

70 Ark. App. at 518-19, 20 S.W.3d at 464-65 (citations omitted).

In the present case, Officer Jones testified that when he approached appellant and told him that he was "trying to score [him] a rock," appellant gave him two rocks. The chemist testified that "it was one plastic bag (which I'm talking about the plastic bag inside it) containing one white-off-white, rock-like substance." As in *McChristian*, we view any difference in these descriptions as, at most, conflicts in evidence properly weighed by

the finder of fact rather than as a failure to prove the authenticity of the cocaine.

 Moreover, there was no obvious break in the chain of custody or other conclusive proof that any tampering transpired. Officer Jones testified that he packaged the items that he received from appellant, initialed the package, and sealed it. He stated that he carried the envelope to the South Central Drug Task Force office where it was locked and secured. The evidence was taken to the State Crime Lab by Chief Investigator Linda Card. Roy Adams of the crime lab identified exhibit one and two and testified that the evidence appeared to be in the same condition as it was when the lab received it. This testimony sufficiently establishes the chain of custody for the items. It is not necessary that the State eliminate every possibility of tampering; instead, the trial court must be satisfied that in all reasonable probability the evidence has not been tampered with. *See Pryor v. State*, 314 Ark. 212, 861 S.W.2d 544 (1993). Therefore, we hold the trial court did not err in admitting the crack cocaine into evidence. Accordingly, we affirm.

Affirmed.

PITTMAN, GLADWIN, ROBBINS, and BIRD, JJ., agree.

HART, GRIFFEN, CRABTREE, and ROAF, JJ., dissent.

A NDREE LAYTON ROAF, Judge, dissenting. The purpose of establishing a chain of custody is not to present an accounting of every hand that touched an item of contraband as it made its way from the alleged perpetrator to the arresting officer to the State Crime Lab and back into Drug Task Force custody. Instead, its purpose is to prevent the introduction of evidence that is not authentic. The majority has lost sight of this purpose, or simply ignored it, by refusing to recognize that the testimony and evidence in this case present a significant possibility that the contraband tested was not the same as that allegedly purchased by the officer and that the State in no way attempted to rebut or explain the discrepancy in the two descriptions of the crack cocaine allegedly purchased from appellant Jerry Hawkins.

At Hawkins's trial for delivery of a controlled substance, David Jones of the South Central Arkansas Drug Task Force testified that on September 26, 2000, he purchased two rocks of crack

cocaine from Hawkins. Jones's affidavit of facts supported his testimony. Although Jones denied that he or anyone else at the Task Force weighed the drug, the felony information filed against Hawkins reflected that it had "an aggregate weight of .382 grams." However, chemist Roy Adams of the State Crime Lab testified that he received only one rock of crack cocaine weighing .118 grams. The State offered the cocaine as State's Exhibit 2. Hawkins timely objected to the admission of State's Exhibit 2, asserting that the evidence offered could not be the same as testified to by Officer Jones. The trial judge overruled Hawkins's objection and admitted the evidence.

Hawkins was found guilty and sentenced to ten years in the Arkansas Department of Correction and was given a $10,000 fine. In his only point on appeal, Hawkins argues that the trial court erred when it overruled his objection to the admission of State's Exhibit 2, namely crack cocaine. Specifically, Hawkins contends that there was a discrepancy in the weight and number of rocks of the exhibit and that the State failed to establish a chain of custody by not showing with reasonable probability that the evidence had not been altered.

Again, the purpose of establishing the chain of custody is to prevent the introduction of evidence that is not authentic. *Gomez v. State,* 305 Ark. 496, 809 S.W.2d 809 (1991). To prove its authenticity, the State must demonstrate with reasonable probability that the evidence has not been altered in any significant manner. *Id.* It is not necessary that every possibility of tampering be eliminated; it is only necessary that the trial judge in his discretion be satisfied that the evidence presented is genuine, and in reasonable probability, has not been altered. *Dixon v. State,* 310 Ark. 460, 839 S.W.2d 173 (1992). Any minor discrepancies are for the trial court to weigh, and absent some evidence of tampering, the trial court is accorded discretion and its rulings in this regard will not be reversed on appeal absent an abuse of discretion. *Holbird v. State,* 301 Ark. 382, 784 S.W.2d 171 (1990); *Irvin v. State,* 28 Ark. App. 6, 771 S.W.2d 26 (1989). However, proof of the chain of custody for interchangeable items like drugs or blood needs to be more conclusive. *Crisco v. State,* 328 Ark. 388, 943 S.W.2d 582 (1997); *Lee v. State,* 326 Ark. 229, 931 S.W.2d 433 (1996); *Gardner v. State,* 296 Ark. 41, 754 S.W.2d 518 (1988).

There are three recent cases from our supreme court that have a particular bearing on this case; all three are cited by the majority opinion. In *Crisco v. State*, the supreme court held that the trial court had abused its discretion by receiving into evidence contraband that was not properly authenticated due to a marked difference in the description provided by an undercover officer and a crime lab chemist. The supreme court held that because there was a significant possibility that the evidence tested was not the same as that purchased by the officer, the State was required to do more to establish the authenticity than to simply trace the route of the envelope containing the substance. Although the discrepancy in *Crisco* involved color and texture, and this case involves weight and quantity, the underlying rationale expressed in *Crisco* holds true in this case. Here, there was a marked difference in both the number of rocks and in the weights as testified to by the officer and chemist, and as reflected in the felony information. There also was no attempt made by the State to clear up the discrepancies or establish the authenticity of the drug tested other than by tracing the route of the envelope.

While the facts of *Crisco* taken alone would seem to decide this case, it is necessary to also look at two other cases decided since *Crisco* that likewise have bearing upon the facts of Hawkins's case. In *Guydon v. State,* 344 Ark. 251, 39 S.W.3d 767 (2001), the admission of crack cocaine evidence turned on discrepancies between the testimony of the officer who weighed and submitted the crack cocaine for evidence and the forensic chemist who analyzed the crack cocaine. The officer in *Guydon* testified that before he put the two pieces of cocaine in sealed packets, initialed the tape, and delivered them to the Arkansas State Crime Laboratory, the two plastic bags of cocaine weighed .3 grams and .2 grams. The crime lab chemist testified that when she weighed the two bags of cocaine they weighed .1828 and .1183 respectively. The court found that, "although there was conflicting testimony concerning the weight of the evidence . . . this variation was insignificant, and note that minor uncertainties in the proof of chain of custody are matters to be argued by counsel and weighed by the jury, but they do not render the evidence inadmissible as a matter of law." Id., 344 Ark. at 257, 39 S.W.3d at 771; *see Harris v. State,* 322 Ark. 167, 907 S.W.2d 729 (1995); *see also Gardner v. State*, 296 Ark. 41, 754 S.W.2d 518 (1988). The *Guydon* court also distinguished its facts from those of *Crisco* by stating that the

minor discrepancy in weights was insufficient to raise a reasonable probability that a break in the chain of custody occurred.

Finally, in *McChristian v. State*, 70 Ark. App. 514, 20 S.W.3d 461 (2000), this court held that conflicting testimony between the arresting officer, who testified that he placed six rocks of cocaine in the evidence bag, and the crime lab chemist, who testified that the evidence bag only contained "a hard off white rock-like substance," were minor uncertainties. The court further stated that "[w]e view differences in these descriptions, at most, as conflicts in evidence properly weighed by the finder of fact rather than as a failure to prove the authenticity of the cocaine." *Id.* at 518, 20 S.W.3d at 465.

Hawkins argues that there is uncertainty in the chain of custody because Officer Jones testified that he placed two rocks of cocaine in the evidence envelope and Adams testified he opened the envelope and found one rock. The State argues that pursuant to the holdings of *McChristian* and *Guydon,* this conflict in testimony merely presents a "minor uncertainty" that does not bar the admission of the evidence, but allows the finder of fact to assign whatever weight to the evidence it chooses. The majority apparently agrees with the State, but it does so without any analysis other than to quote directly from *Crisco* and *McChristian*, repeat excerpts from the testimony in Hawkins's case, and conclude, "[A]s in *McChristian*, we view any difference in these descriptions as, at most, conflicts in evidence properly weighed by the finder of fact rather than as a failure to prove the authenticity of the cocaine." The fact remains that two rocks somehow became one between the alleged sale of the contraband and its arrival at the crime lab. This is not a "minor uncertainty" involving minuscule weights as was present in *Guydon,* nor is it analogous to the difference in *McChristian* between an officer who specified a number of rocks and a chemist who did not. The majority does not directly assert that it is, because undoubtedly it would be a misrepresentation of the facts of this case to do so. The facts contained in both the abstract and, unfortunately for Mr. Hawkins, with even more clarity in an unabstracted portion of the record, place this case squarely within the holding and authority of *Crisco*. By refusing to follow *Crisco*, this court has done a disservice to both Mr. Hawkins and our notion of justice. I would reverse and remand.

HART, GRIFFEN, and CRABTREE, JJ., join.