Cite as 2019 Ark. App. 490

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CR-19-222

| | | |
|---|---|---|
| | | **Opinion Delivered:** October 30, 2019 |
| CRAYTONIA BADGER | APPELLANT | APPEAL FROM THE COLUMBIA COUNTY CIRCUIT COURT [NO. 14CR-16-7] |
| V. | | |
| STATE OF ARKANSAS | APPELLEE | HONORABLE DAVID W. TALLEY, JR., JUDGE |
| | | AFFIRMED AS MODIFIED |

## BART F. VIRDEN, Judge

A Columbia County jury convicted appellant Craytonia Badger of third-degree escape, first-degree criminal mischief, and breaking or entering. He was sentenced as a habitual offender to an aggregate term of sixty years' imprisonment. Badger argues that the trial court erred in (1) denying his motion to dismiss for violation of the speedy-trial rules, (2) denying his motion to suppress a custodial statement, and (3) denying his directed-verdict motion as to his first-degree criminal-mischief conviction. We affirm as modified.

### I.  *Directed-Verdict Motion*

Although it is his third point on appeal, we address Badger's sufficiency argument first because of double-jeopardy concerns. *Raheem v. State*, 2018 Ark. App. 620, 566 S.W.3d 148. A motion for directed verdict is a challenge to the sufficiency of the evidence. *Davis v. State*, 2009 Ark. App. 753. On appeal, in reviewing a challenge to the sufficiency of the

evidence, we view the evidence in the light most favorable to the verdict to determine whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id.* Decisions regarding the credibility of witnesses are for the trier of fact. *Id.*

Badger challenges the sufficiency of the evidence only as it pertains to his first-degree criminal-mischief conviction. A person commits the offense of criminal mischief in the first degree if he or she purposely and without legal justification destroys or causes damage to any property of another. Ark. Code Ann. § 5-38-203(a)(1) (Repl. 2013). The offense is a Class D felony if the amount of actual damage is more than $1,000 but $5,000 or less. Ark. Code Ann. § 5-38-203(b)(2).

Considering only the evidence that supports the verdict, Badger was an inmate at the Columbia County detention facility when he escaped on the night of December 6 or the early morning of December 7, 2015. The testimony established that Badger had been the only inmate in pod 5C. There was testimony that a dismantled speaker and various tools found in pod 5C had been used to create a hole through the ceiling of the cell and the roof of the building. An invoice from a sheet-metal company showed that the facility had been billed $2,474.21 on December 22, 2015, for "labor and material to repair hole cut in roof and repaired roof leaks." Captain Mike McWilliams testified that the Columbia County Sheriff's Department paid the bill and that he was not aware of any other holes in the roof needing repair in December 2015.

2

Badger argues on appeal that there was no substantial evidence that he committed criminal mischief because McWilliams had no personal knowledge of the repairs, he did not create the invoice, and he did not pay the invoice himself. Badger contends that McWilliams should not have been permitted to testify that he (Badger) was 100 percent at fault for the damage and subsequent repairs to fix the hole and the leaking roof. Badger argues that the invoice was the only evidence as to the amount of damages caused by his escape and that the jury had to speculate that the amount of the damages exceeded $1,000.

When reviewing the sufficiency of the evidence, this court considers all the evidence, whether admitted properly or erroneously. *Campbell v. State*, 2017 Ark. App. 59, 512 S.W.3d 663. Even if the trial court abused its discretion in admitting the invoice into evidence, this court would nevertheless consider it. Although Badger argues that he was not entirely at fault for the repairs, this argument was raised as part of his evidentiary objection to the admission of the invoice, and not part of his directed-verdict motion. *Ingle v. State*, 2010 Ark. App. 410, 379 S.W.3d 32 (holding that arguments made in support of sufficiency-of-the-evidence challenge that were not made in directed-verdict motion are not preserved for review). Given McWilliams's testimony, together with the invoice, we hold that there was substantial evidence that Badger damaged jail property in an amount exceeding $1,000. In his argument, Badger also complains about the "resulting restitution," but the sentencing order does not reflect that he was ordered to pay restitution. We also note that the sentencing order indicates that Badger was convicted of a Class C felony, which is incorrect.[1]

---

[1]A Class C felony requires that the amount of actual damage be more than $5,000 but less than $25,000. Ark. Code Ann. § 5-38-203(b)(3).

We therefore modify the order to reflect that Badger was convicted of a Class D felony under section 5-38-203(b)(2).

## II. *Motion to Dismiss for Speedy-Trial Violation*

As relevant here, Arkansas Rule of Criminal Procedure 28.1 requires the State to bring a criminal defendant to trial within twelve months from the date of his or her arrest,[2] excluding only such periods of necessary delay as are authorized by Rule 28.3. If a defendant is not brought to trial within the requisite time, he or she is entitled to have the charges dismissed with an absolute bar to prosecution. Ark. R. Crim. P. 30.1(a). Once it has been shown that a trial will be held after the speedy-trial period set out in Rule 28.1 has expired, the State bears the burden of proving that the delay was the result of the defendant's conduct or was otherwise justified. *Miles v. State*, 348 Ark. 544, 75 S.W.3d 677 (2002). This court conducts a de novo review to determine whether specific periods of time are excludable under the speedy-trial rules. *Federick v. State*, 2012 Ark. App. 552, 423 S.W.3d 649.

Badger was arrested on December 8, 2015, and his jury trial occurred on November 28, 2018—a period of 1,086 days. Thus, Badger made a prima facie showing that his trial was held after the speedy-trial period had expired, so the State had the burden of showing that the delay was the result of Badger's conduct or was otherwise justified.

On appeal, Badger stipulates that 684 days[3] were properly excluded from the 1,086 total, including a period of 568 days, from March 15, 2016, when Badger filed a notice of

---

[2]Rule 28.2(a) provides that the time for trial shall commence running from the date of arrest or service of summons. Ark. R. Crim. P. 28.2(a).

[3]We do not comment on the accuracy of any of Badger's calculations.

intent to rely on the defense of mental disease or defect, to October 4, 2018, when that motion was heard. According to Badger, there are 402 days that are not excludable. He argues that several periods excluded by the trial court should not have been excluded because of the inadequacy of the docket entries. Badger asserts, however, that the "most contested" period is when he was outside the State of Arkansas and being held in federal custody against his will—a period of 260 days. Because this period is determinative, we do not address the propriety of excluding the other periods.

A hearing on Badger's motion to dismiss on speedy-trial grounds was held on May 30, 2018. Ryan Phillips, deputy prosecuting attorney for Columbia County, testified that Badger was arrested on December 8, 2015, and held in a detention facility until January 8, 2016, when he was transferred to the Arkansas Department of Correction. He said that he learned that U.S. Marshals had taken Badger into custody on March 25, 2016, because of federal and state charges pending against him in Mississippi. Phillips said that Badger went back and forth between detention centers in Mississippi and Tennessee. He testified that the period from March 29 to April 8, 2016, was unaccounted for on the U.S. Marshals' information sheets and that he thought Badger was facing a State of Mississippi charge during that time but that he was not able to verify the gap.

Phillips said that in June 2016, he contacted Scott Frazer, the lead investigator on the federal case in Mississippi and a "liaison" with the U.S. Marshals, to assist with getting Badger back to Arkansas. He said that Frazer told him to contact Linda King with the Department of Justice, who told him to speak with Robert Mims, the federal prosecutor for the Northern District of Mississippi. Phillips testified that he made numerous phone calls

5

and sent emails to Mims through July and August but that, ultimately, Mims advised him that Badger would not be released to return to Arkansas until he was sentenced in the federal case. According to Phillips, Badger was not returned to Arkansas until January 27, 2017. He stated that he and prosecuting attorney David Butler "went down every avenue we could think of" to get Badger back to Arkansas and had even offered to pick up Badger and return him to Mississippi, but that offer was declined.

Phillips testified that Badger's name appeared on regular docket calls for the Columbia County Circuit Court, Fifth Division, from March 25, 2016, through January 27, 2017, and that he had advised the court on several occasions that Badger was out of state.[4] Phillips said that he further advised the court that he was trying to determine Badger's exact location to arrange to get him back to Arkansas for court.

Phillips testified that in Badger's pro se motion to dismiss filed December 14, 2016, he mentioned having sent several letters to the prosecutor demanding a trial, but Phillips said that his office did not receive any direct communication from Badger. Phillips noted that Badger's certificate of service on the letters had the address of 118 East Calhoun but that the prosecutor's official and correct mailing address is P.O. Box 727. Phillips stated that the prosecuting attorney's office does not receive mail from the U.S. Post Office at its physical address.

Attached to Badger's motion to dismiss was correspondence from him to the Columbia County Circuit Court judge with copies to the circuit court clerk and to the

---

[4]The docket sheet and court orders reflect that continuances were granted and that the time was excluded for speedy-trial purposes from May 5 to November 3, 2016.

prosecutor file-marked November 14, 2016, in which Badger demanded a trial; correspondence from him to the judge, the court clerk, and the prosecutor, file-marked November 14, 2016, in which Badger requested a trial and waived extradition; unspecified correspondence in which Badger asserted that his transportation provider was readily available to transport him at the court's request; and the State's Information. Attached to the State's response was a writ of habeas corpus ad prosequendum dated March 23, 2016, from the Northern District of Mississippi; a copy of the custody-transfer order dated March 25, 2016; a detainer dated October 5, 2016; and a sheriff's receipt dated January 27, 2017. No exhibits were offered into evidence at the hearing, but the trial court agreed to Badger's request that it take judicial notice of one of the letters attached to Badger's motion.

In its order denying Badger's motion to dismiss, the trial court ruled, in relevant part, that Badger was in federal custody and held at the following facilities on the following dates:

Miller County, Arkansas Detention Facility: March 25–29, 2016;

Lafayette County, Mississippi Detention Facility: April 8–May 6, 2016;

Monroe County, Mississippi Detention Facility: May 6–21, 2016;

West Tennessee Detention Facility: May 21–July 28, 2016;

Monroe County, Mississippi Detention Facility: July 28–August 2, 2016;

West Tennessee Detention Facility: August 2, 2016–January 27, 2017.

The trial court found that the State had made a conscientious effort in its attempts to return Badger to Arkansas. The trial court further found that the period from April 8, 2016, to January 27, 2017—a period of 294 days—was excluded for speedy-trial purposes.

On appeal, Badger challenges the period of time from April 8[5] to December 14, 2016, when he filed his pro se motion to dismiss—a period of approximately 250 days. A defendant is not required to bring himself to trial or "bang on the courthouse door" to preserve his right to a speedy trial; the burden is on the courts and the prosecutors to see that trials are held in a timely fashion. *Estell v. State*, 2017 Ark. App. 17. The appellate courts have, however, placed the responsibility on the defendant to be available for trial. *White v. State*, 310 Ark. 200, 833 S.W.2d 771 (1992).

An excluded period pursuant to Ark. R. Crim. P. 28.3(a) is the period of delay resulting from other proceedings concerning the defendant, including trials of other charges against the defendant. Another excluded period is a period of delay resulting from the absence or unavailability of the defendant. Ark. R. Crim. P. 28.3(e). Rule 28.3(e) further provides, "A defendant shall be considered absent whenever his whereabouts are unknown. A defendant shall also be considered unavailable whenever his whereabouts are known but his presence for trial cannot be obtained or he resists being returned to the state for trial." Ark. R. Crim. P. 28.3(e). A period of delay resulting from "trial of other charges against the defendant" in a foreign jurisdiction commences when the accused is taken to the foreign jurisdiction and ends when the trial in that jurisdiction is completed and the accused becomes available for extradition. *Patterson v. State*, 318 Ark. 358, 885 S.W.2d 667 (1994).

---

[5]In his argument, Badger actually challenges the period from March 29 to December 14, 2016; however, the trial court did not exclude the period from March 29 through April 7.

8

An accused in prison in another state, for a different crime, must affirmatively request a trial in order to activate the speedy-trial rule. *White, supra.*

Badger argues that he demanded a jury trial in various letters, which were filed with the court clerk, although he admits that he did not use those exact words. Badger asserts that the record is replete with documentation that the prosecuting attorney had knowledge that he (Badger) was out of state. Badger argues that, although the prosecuting attorney testified that he had no knowledge of his letters, he also testified that he was attempting to get Badger back to Arkansas for trial. Here, Phillips testified that he had knowledge that Badger was out of state, but that does not mean Phillips acquired that knowledge because he, in fact, received Badger's letters. He could have learned that information through other sources. Phillips testified that he did not receive Badger's correspondence directly because it had been sent to the prosecutor's physical address, instead of the mailing address.

Citing Ark. R. Crim. P. 29.1(b),[6] Badger contends that, although the prosecuting attorney made a detainer request, there was no testimony from anyone who received it, no evidence as to the identity of the recipient, and no indication that it had been filed. He also points out that it was dated October 5, 2016, which was seven months after he had been taken into federal custody. Badger is raising this argument for the first time on appeal. Although the detainer was attached to the State's response to Badger's motion to dismiss,

---

[6]Rule 29.1 provides that, if the prosecuting attorney has information that a person charged with a crime is imprisoned in a penal institution of a jurisdiction other than the State of Arkansas, he shall promptly cause a detainer to be filed with the official having custody of the prisoner and request such officer to advise the prisoner of the filing of the detainer and of the prisoner's right to demand trial.

9

no mention was made of it at the hearing. We do not address arguments not made below. *Autrey v. State*, 90 Ark. App. 131, 204 S.W.3d 84 (2005).

Badger further argues that the record reflects that the State made "almost no effort" to get him back to Arkansas. He asserts that, although Phillips claimed to have tried every avenue, there was no evidence that he attempted to extradite Badger under the Interstate Agreement on Detainers Act, Ark. Code Ann. §§ 16-95-101 et seq., or under the Uniform Criminal Extradition Act, Ark. Code Ann. §§ 16-94-101 et seq., and that there was no evidence of any attempt to get a governor's warrant. Badger argues that the emails to Mims that Phillips referred to were not even introduced into evidence. At the hearing, Phillips was subjected to cross-examination, but he was not asked about other avenues he could have tried but did not and was not asked about the absence of documentation. We thus do not reach these arguments on appeal. *Autrey*, *supra.*

Phillips testified that he communicated with, among others, the federal prosecutor in Mississippi, who refused to return Badger until he was sentenced on federal charges. The record reveals that Badger was sentenced to a term of imprisonment by the federal court in Mississippi on January 25, 2017; Badger was returned to Arkansas two days later. The trial court properly excluded the time that Badger was out of state because, although his general whereabouts were known, Badger was not available in that his presence could not be obtained due to the federal prosecutor's refusal to release him to return to Arkansas despite Phillips's pleas. Badger was unavailable pursuant to Rule 28.3(e).

A total of 1,086 days, minus approximately 684 days, leaves 402, which means that the State had to account for only thirty-seven days. The 402-day period, minus the 250 days

that Badger was unavailable, means that the State tried Badger within approximately 152 days of his arrest, which is well within the one-year period prescribed by Rule 28.1. As such, we conclude that there was no violation of the speedy-trial rules.

### III. *Motion to Suppress Statement*

After Badger was apprehended, he was advised of his *Miranda* rights and agreed to give a statement. During the interview, Badger repeatedly asked for, and was eventually given, a slice of pizza from a pie the detectives had been eating. Badger later moved to suppress his statement, contending that his statement had been coerced and was given "under the influence of hunger."

A statement made while in custody is presumptively involuntary, and the burden is on the State to prove by a preponderance of the evidence that a custodial statement was given voluntarily and was knowingly and intelligently made. *Johnson v. State*, 2016 Ark. App. 71, 482 S.W.3d 355. In order to determine whether a waiver of *Miranda* rights is voluntary, this court looks to see if the confession was the product of free and deliberate choice rather than intimidation, coercion, or deception. *Id.* Once a defendant alleges coercion during a custodial interrogation, it is the obligation of the State to present all material witnesses. *Smith v. State*, 254 Ark. 538, 494 S.W.2d 489 (1973).

Following a hearing, the trial court denied Badger's motion to suppress; however, the State did not ultimately use the recorded statement at trial. On appeal, Badger argues that the trial court erred in denying his motion to suppress his statement because there was coercion and because the State failed to call a material witness. Badger acknowledges that

his statement was not ultimately used against him at trial but contends that he nevertheless suffered prejudice.

Prejudice is not presumed, and the appellate courts will not reverse absent a showing of prejudice. *Watson v. State*, 2012 Ark. 430. Badger argues that he suffered prejudice because his strategy had been to demand that the entire video be played for the jury because there was mitigating evidence within his explanation for his actions. We note that Badger did not seek to introduce the evidence himself after the State had chosen not to use the statement against him. Further, we cannot see how Badger was aggrieved by the trial court's ruling because there would have been no change in the outcome if the trial court had granted Badger's motion to suppress—the State would not have used his statement against him. Because his statement was not used at trial, Badger cannot demonstrate prejudice from the trial court's ruling. *See, e.g.*, *Watson*, *supra*.

Affirmed as modified.

SWITZER and VAUGHT, JJ., agree.

*Andrew W. Best*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Adam Jackson*, Ass't Att'y Gen., for appellee.