Cite as 2020 Ark. App. 368

# ARKANSAS COURT OF APPEALS

DIVISION III

**No.** CR-19-902

| | |
|---|---|
| JEREMIAH ALAN WEBB | **Opinion Delivered** September 2, 2020 |
| APPELLANT | APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, GREENWOOD DISTRICT [NO. 66GCR-18-266] |
| V. | |
| STATE OF ARKANSAS | HONORABLE STEPHEN TABOR, JUDGE |
| APPELLEE | AFFIRMED |

## MEREDITH B. SWITZER, Judge

Appellant Jeremiah Webb was charged as a habitual offender with the offenses of possession of drug paraphernalia, possession of less than four ounces of marijuana, and driving while intoxicated, first offense, in connection with a motor-vehicle accident. He was found guilty by a Sebastian County Circuit Court jury of possession of drug paraphernalia and driving while intoxicated; the jury acquitted him of the possession-of-marijuana charge. He was sentenced to a total of twelve years in the Arkansas Department of Correction and was assessed fines and court costs. On appeal, Webb argues that the State failed to prove the chain of custody for certain evidence.[1] We affirm.

---

[1]Prior to trial, Webb moved to suppress evidence on the basis of a warrantless search and seizure and to suppress statements he made at the scene of the accident and at the police station. His motion was granted as to the accident-scene statements, but it was denied as to the evidence found in his vehicle and to the statements he made at the police station. Webb makes no argument on appeal regarding the partial denial of his motion to suppress; he only argues there was insufficient proof of the chain of custody of the physical evidence.

The evidence at trial revealed that on November 4, 2018, Officer Donald Rowe of the Barling Police Department responded to an accident and noticed Webb had body tremors, his pupils were dilated, and he was speaking in a low tone. When asked by Rowe, Webb denied he had been drinking, but Webb did not answer when asked if he had taken any narcotics. Webb exhibited signs of impairment on all four field-sobriety tests administered by Rowe, and he was arrested for DWI. Webb requested that Rowe retrieve his cell phone from the center console of his vehicle. When Rowe opened the door of Webb's truck, he smelled the odor of marijuana, and when he opened the console to retrieve the phone, he saw a small glass pipe with a white substance in it and a black and blue tin containing what appeared to be marijuana.

At trial, Rowe identified State's exhibit 1 as the tin box containing suspected marijuana and the glass pipe that he had seized. Rowe stated that he had packaged the evidence himself and that the package bore his initials, the case number, Webb's name, and the time and date. Webb's counsel objected to the chain of custody of the evidence, arguing that there was substantial evidence of tampering because in Rowe's report, the black and blue tin was identified as E-1 and the glass pipe was identified as E-2, whereas in the crime-lab report, the glass pipe was identified as E-1 and E-2 was described as green vegetable material and one partially burned, hand-rolled cigarette containing burned green vegetable material. On cross-examination, Rowe explained that one package contained both the glass pipe and the blue tin box (E-1 and E-2), but neither the pipe nor the tin was labeled individually. Officer Rowe further explained that while the tin was not mentioned in the crime-lab report, what was mentioned was the material inside the tin—the suspected

2

marijuana and burnt, rolled-up cigarette. Rowe admitted that when he had Webb's truck towed, he had performed an inventory search listing the contents of the vehicle and had received a tow slip, but he was unable to produce the document because it could not be found. Other officers testified as to the manner in which the evidence was transported to and from the crime lab. Webb's counsel renewed his objection to chain of custody based on the substantial variation of descriptions between Rowe's report of what was submitted and what was stated on the lab report. The circuit court overruled Webb's objection and allowed the crime-lab report to be admitted into evidence, stating that the laboratory case number and the agency case number matched in both respects.[2]

On appeal, Webb contends that "the State failed to prove that the items seized at the time of his arrest, the items sent to the crime lab for testing, and the items that were tested are, in fact, one and the same." Evidentiary matters regarding the admissibility of evidence are left to the sound discretion of the circuit court and will not be reversed absent an abuse of that discretion. *Gill v. State*, 2010 Ark. App. 524, 376 S.W.3d 529. The purpose of establishing a chain of custody is to prevent the introduction of evidence that has been tampered with or is not authentic. *Hawkins v. State*, 81 Ark. App. 479, 105 S.W.3d 397 (2003). Authentication requirements are satisfied if the circuit court, in its discretion, concludes that the evidence presented is genuine and that, in reasonable probability, it has

---

[2]Rowe also obtained a urine sample from Webb that was sent to the crime lab for analysis. The results revealed positive tests for cannabinoids and amphetamines. Webb's counsel also objected at trial to admission of the uranalysis results due to a lack of chain of custody. While the State has addressed in its reply brief why this objection did no constitute reversible error, it is not necessary to address this issue because Webb did not raise it as a point on appeal.

not been tampered with or altered in any significant manner. *Raquel-Dieguez v. State*, 2015 Ark. App. 626, 475 S.W.3d 585. It is not necessary that the State eliminate every possibility of tampering. *Matlock v. State*, 2019 Ark. App. 470, 588 S.W.3d 152. Minor uncertainties in the proof of chain of custody are matters to be argued by counsel and weighed by the jury, but they do not render the evidence inadmissible as a matter of law. *Hawkins*, *supra*. Proof of the chain of custody for interchangeable items like drugs or blood needs to be more conclusive. *Duff v. State*, 2018 Ark. App. 112, 540 S.W.3d 738.

Webb cites *Chrisco v. State*, 328 Ark. 388, 943 S.W.2d 582 (1997), to support his contention that the circuit court abused its discretion in finding the State proved a sufficient chain of custody. There, the item in question was methamphetamine, and the issue arose due to differing descriptions of the substance. The officer testified that the drug was "an off-white powder substance," and the forensic chemist described the drug as "a tan, rock-like substance" and testified that he would not have described the substance as an off-white powder. While there was no conclusive proof any tampering transpired, due to the differing descriptions of the methamphetamine and the fact that the drug involved was a readily interchangeable substance, our supreme court held that "the State was required to do more to establish the authenticity of the drug tested than merely trace the route of the envelope containing the substance." *Chrisco*, 328 Ark. at 392, 943 S.W.2d at 585.

Here, Webb argues the State failed to demonstrate with reasonable probability that the evidence was not tampered with because there was no evidence submission form, the evidence item numbers on the police report did not match the item numbers on the crime-lab report, and the circuit court allowed speculation that there was just a mix-up of the

4

items in the bag. This case is distinguishable from *Chrisco*. The issue here centers on the labeling, or lack thereof, of two pieces of evidence contained in the same evidence envelope—the glass pipe and the tin containing suspected marijuana. Officer Rowe testified he found the glass pipe and the tin box containing the suspected marijuana in the console of Webb's truck; he packaged the evidence himself; and he placed his name, the case number, Webb's name, and the time and date on the package. The two items were placed in the same evidence package and were identified as E-1 and E-2, but neither item was specifically or individually marked as E-1 and E-2. While Rowe identified the tin containing the suspected marijuana as E-1 and the glass pipe as E-2 in his report, the crime lab labeled the items just opposite of Rowe's designation, with the glass pipe being labeled as E-1 and the suspected marijuana in the tin labeled as E-2. A reasonable explanation as to why the item numbers differed in the reports was provided because the two items were in the same evidence package but not individually labeled. Additionally, while Rowe's report identified the tin containing the suspected marijuana as the evidence, the lab report mentioned only the suspected marijuana contained in the tin, which it analyzed, and not the tin itself. Again, this provided a reasonable explanation as to the differences between the two reports. The case numbers on Rowe's report and the crime-lab report were the same. In admitting the evidence, the circuit court stated that the discrepancies relate to the credibility of the evidence. It is not necessary that the State eliminate every possibility of tampering; minor discrepancies in the proof of chain of custody do not render evidence inadmissible, and it is for the finder of fact to weigh such discrepancies. *Hawkins*, *supra*. The circuit court did not abuse its discretion in concluding the State had satisfied the

5

authentication requirements and that, in reasonable probability, the evidence had not been tampered with or altered in any significant manner.

Even if it had been error to admit the evidence, Webb could not show he was prejudiced by its admission. The jury acquitted Webb of the possession–of–marijuana charge, so there could be no prejudice regarding the tin of marijuana. Officer Rowe testified about finding the glass pipe in Webb's truck console and recognizing it was drug paraphernalia. Even without the introduction of the pipe itself, a witness may testify regarding tangible objects involved in a criminal case. *Lambert v. State*, 2012 Ark. 150, at 5 (per curiam).

Affirmed.

GLADWIN and VAUGHT, JJ., agree.

*Ernie Witt*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Jacob H. Jones*, Ass't Att'y Gen., for appellee.

6