Cite as 2020 Ark. App. 555

# ARKANSAS COURT OF APPEALS

DIVISION III

**No.** CR-19-793

| | | |
|---|---|---|
| MACK HARRIS | APPELLANT | **OPINION DELIVERED:** DECEMBER 9, 2020 |
| | | APPEAL FROM THE HOT SPRING COUNTY CIRCUIT COURT [NO. 30CR-18-311] |
| V. | | |
| | | HONORABLE CHRIS E WILLIAMS, JUDGE |
| STATE OF ARKANSAS | APPELLEE | AFFIRMED |

## ROBERT J. GLADWIN, Judge

Mack Harris was convicted in the Hot Spring County Circuit Court of possession of a controlled substance.[1] He argues on appeal that the circuit court erred by denying his motion to dismiss for two reasons: (1) the discrepancy in the weight of the methamphetamine at issue as alleged in the information and as testified to by an employee of the Arkansas State Crime Laboratory; and (2) the delay in his trial. We affirm.

### I. *Facts*

On December 12, 2018, Harris was charged by information, which alleged that on December 10, 2017, Harris was an inmate at the Ouachita River Correctional Unit (ORCU) and had knowingly possessed less than two grams of methamphetamine. Further, Harris was charged as a habitual offender, having been convicted of four or more felonies.

---

[1]In Harris's original appeal, his counsel filed a motion to withdraw and a no-merit brief; however, we ordered rebriefing, remanded for correction of the sentencing order, and denied counsel's motion to withdraw. *Harris v. State*, 2020 Ark. App. 330.

He was appointed counsel at a hearing on January 22, 2019. A jury trial was set for March 18, and it was later continued to March 21.

On February 27, Harris filed a pro se motion to dismiss "this single charge of possession of a controlled substance while incarcerated." In the motion, Harris alleged that the Arkansas Department of Correction (ADC) officers involved with his charge failed to follow "proper procedures when dealing with possible controlled substances." He alleged that the substance taken from him could have been "changed/switched or substituted at any point." He alleged that the ADC officers were not "sworn law-enforcement officers and are not required to maintain proper chain of custody of evidence." He asked for dismissal based on the alleged "improper handling" of the evidence and "failure to follow a chain of custody."

On March 13, Harris filed two more pro se motions. First, he moved to represent himself. Second, he moved to dismiss based on Rules 28.1 and 28.2 of the Arkansas Rules of Criminal Procedure. Rule 28.1(b) provides that any defendant charged with an offense and incarcerated in prison in this state pursuant to conviction of another offense shall be entitled to have the charge dismissed with an absolute bar to prosecution if not brought to trial within twelve months from the time provided in Rule 28.2. Rule 28.2(a) provides that the time for trial shall commence running from the date of arrest or service of summons. In the motion, Harris claimed that the incident for which he was charged happened on December 10, 2017, while he was incarcerated. He argued that under Rules 28.1 and 28.2,

the State had until December 10, 2018, to take him to trial.[2]  Because the State did not do so before that time, Harris claimed he was entitled to a dismissal of all charges against him.[3] The State responded that Harris had been served with summons on January 21, 2019, which is the date that time began to run under Rule 28.2(a) for speedy-trial purposes.

Before the jury trial began on March 21, the circuit court heard pending motions. The circuit court granted the defense's motion in limine to exclude Harris's habitual-offender status unless Harris was found guilty and the case went to the jury for sentencing. The circuit court conducted a hearing on Harris's pro se motion to dismiss, and Harris testified that he had not learned that he was charged until he was served with the warrant on January 21, 2019.  The circuit court found that the charges were filed against Harris within the time period of the statute of limitations and that there was insufficient proof for the case to be dismissed on speedy-trial grounds.  Finally, Harris stated that he wanted to be represented by his attorney; thus, Harris's motion to represent himself was dismissed.  The

---

[2]In his dismissal motion, Harris also relies on Arkansas Rules of Criminal Procedure 27.1(b) (giving precedence in scheduling for trials of criminal offenses in which the accused is incarcerated); 29.1(a) (when a person charged with a crime is imprisoned in a penal institution in the State of Arkansas, the prosecuting attorney shall promptly seek to obtain the presence of the prisoner for trial); and 29.1(c) (upon receipt from a prisoner of a demand for trial upon a pending charge, the prosecuting attorney shall promptly seek to obtain the presence of the prisoner for trial).

[3]Within the motion, Harris acknowledged that the probable-cause affidavit was not filed until October 22, 2018.  He noted that the affidavit contains information that the Arkansas State Police (ASP) had received the evidence from the warden's office on December 15, 2017; that it was delivered to the Arkansas State Crime Laboratory on January 10, 2018; that the ASP received notice of the lab results on September 13, 2018; and that a felony bench warrant was "printed" on December 12, 2018, and served on him at the Hot Spring County Jail on January 21, 2019.

circuit court did not address Harris's motion of February 27 seeking dismissal of the possession charge on the basis of a chain-of-custody argument.

After the jury had been chosen and sworn, Sergeant Neal Thomas testified that he worked for the ASP Criminal Investigation Division and had investigated Harris's case. On December 15, 2017, he collected the evidence from the warden's office in the ORCU; secured the evidence at his own office; repackaged the evidence for the Arkansas State Crime Laboratory; and delivered the evidence to the lab for analysis. He said that Special Agent Joshua Heckel received the evidence back from the lab on Friday, January 18, 2019. Thomas produced the evidence package, which contained an envelope containing four baggies of what had been suspected to contain, and later identified as, methamphetamine. Thomas also identified a submission form that he had signed when he delivered the evidence to the crime lab.

Special Agent Heckel testified that he is a task force officer in the Department of Homeland Security, Criminal Investigations Division of the ASP. He said that after the evidence was analyzed, he retrieved it from the crime lab and delivered it to Sergeant Thomas. Susan Inskeep testified that on December 10, 2017, she worked as administrative specialist to the warden at the ORCU and received some contraband as part of her job to receipt all evidence and lock it in the evidence safe. The evidence was turned over to the ASP on December 15.

Josh Crosby testified that he is a captain on shift at the ORCU, and on December 10, 2017, he received contraband from Sergeant Wehunt. He identified State's exhibit 2 as a copy of the chain-of-custody form that he had signed. Bonnie Wehunt testified that she

4

is retired from ADC and that on December 10, 2017, she received some contraband from Officer Keisler, and she put it in the safe. The contraband stayed in the safe for about six hours, and then it went to Captain Crosby. She identified the chain-of-custody form, State's exhibit 2. When asked to identify exhibit 3, she said that she did not remember it exactly, and then said, "But, I mean, the, but, yes. He had packages" that were at least similar to the one shown her.

Jeff Keisler testified that on December 10, 2017, he was doing security rounds at the ORCU and walked by Harris's barracks. He said that Harris and another man had something white on "kind of like a mirror." He asked Harris what it was, and Harris said that it was aspirin. Keisler said that he knew it was not aspirin, so he gathered it and called his sergeant, who retrieved it. He identified State's exhibit 2, the chain-of-custody form that he had signed. He also said that State's exhibit 3 "looks about what it was." He said, "That's probably what I found. If it's in evidence that's what they done with it." All three exhibits were admitted over defense's objections. Keisler identified Harris, and he confirmed that two inmates had been in the cell when the contraband was found. Keisler said that Harris had the drugs in his lap and that Harris was the one cutting it up.

Amanda Blox, forensic chemist at the Arkansas State Crime Laboratory, testified as an expert witness that the substance in evidence tested positive for methamphetamine and that it weighed 1.3072 grams.

Defense counsel moved for a directed verdict on the possession charge, and the circuit court denied the motion. When the defense rested, the motion for directed verdict was renewed on the same basis, and the circuit court again denied it.

The jury found Harris guilty of possession of a controlled substance, methamphetamine. Thereafter, the State presented evidence of Harris's thirteen prior felony convictions. The jury recommended fifteen years' imprisonment, and the circuit court sentenced Harris to fifteen years to run consecutively to the sentence he is currently serving. A sentencing order was filed on March 29, 2019, and Harris filed a timely, pro se notice of appeal on April 15, and his appointed appellate counsel also filed a notice of appeal on April 22.[4]

## II. *Chain of Custody*

Harris first argues that the circuit court erred by denying his pro se motion to dismiss, which may be described as a chain-of-custody argument. We have stated,

> The purpose of establishing a chain of custody is to prevent the introduction of evidence that has been tampered with or is not authentic. *Hawkins v. State*, 81 Ark. App. 479, 105 S.W.3d 397 (2003). Authentication requirements are satisfied if the circuit court, in its discretion, concludes that the evidence presented is genuine and that, in reasonable probability, it has not been tampered with or altered in any significant manner. *Raquel-Dieguez v. State*, 2015 Ark. App. 626, 475 S.W.3d 585. It is not necessary that the State eliminate every possibility of tampering. *Matlock v. State*, 2019 Ark. App. 470, 588 S.W.3d 152. Minor uncertainties in the proof of chain of custody are matters to be argued by counsel and weighed by the jury, but they do not render the evidence inadmissible as a matter of law. *Hawkins*, *supra*. Proof of the chain of custody for interchangeable items like drugs or blood needs to be more conclusive. *Duff v. State*, 2018 Ark. App. 112, 540 S.W.3d 738.

---

[4]On April 23, Harris filed a pro se motion for new trial based on Arkansas Rule of Criminal Procedure 37, arguing the grounds of ineffective assistance of counsel. He claimed, among other things, that his trial counsel had failed to file any pretrial motions regarding chain of custody, that the evidence collected had a net weight of 1.8712 grams, that the crime lab showed the evidence weighed 1.3072 grams, and that had this argument been made, he could have shown the evidence had been tampered with, and it would have been suppressed. However, Harris withdrew his new-trial motion by order filed August 5.

*Webb v. State*, 2020 Ark. App. 368, at 3–4, 605 S.W.3d 295, 297.

Harris admits on appeal that the State proved a chain of custody sufficient to admit the drugs into evidence. He argues only the discrepancy between what the State alleged to have confiscated—1.8712 grams of methamphetamine—and the weight of the substance according to testimony of the forensic chemist from the Arkansas State Crime Laboratory—1.3072 grams. He contends that "[a]t some point, .564 grams of drugs disappeared. This is more than a minor discrepancy in the chain of custody." This contention is the whole of his argument.

We hold that Harris's claim is not preserved for appellate review because he did not argue this discrepancy below, and the circuit court did not rule on his motion to dismiss related to the allegations raised regarding evidence tampering. *Ayers v. State*, 334 Ark. 258, 975 S.W.2d 88 (1998) (holding arguments not raised and objections and questions left unresolved by the circuit court are waived and may not be relied upon on appeal).

### III. *Speedy Trial*

Harris contends that in his March 13, 2019 motion to dismiss, he argued that precedence should be given to the trials of incarcerated accused criminal offenders. Ark. R. Crim. P. 27.1(b). He also argued that a prosecuting attorney, having knowledge that a defendant is in custody in the ADC, must promptly obtain the presence of such prisoner for trial. Ark. R. Crim. P. 29.1(a) and (c). Harris claims that because this incident happened on December 10, 2017, the State had until December 10, 2018, to have a trial; thus, he argues for reversal.

This court conducts a de novo review to determine whether specific periods of time are excludable under the speedy-trial rules. *Badger v. State*, 2019 Ark. App. 490, at 4, 588 S.W.3d 779, 782–83. Arkansas Rule of Criminal Procedure 28.1 requires the State to bring a criminal defendant to trial within twelve months from the date of his or her arrest. If a defendant is not brought to trial within the requisite time, he or she is entitled to have the charges dismissed with an absolute bar to prosecution. Ark. R. Crim. P. 30.1(a). The State bears the burden of proving that a trial delay beyond the speedy-trial period under these rules was the result of the defendant's conduct or was otherwise justified. *Badger, supra.*

Harris argues that the circuit court impermissibly shifted the burden of proving a speedy-trial violation to him during the hearing on this issue rather than asking the State to show that the delay was a result of Harris's conduct or was otherwise justified. *Gwin v. State*, 340 Ark. 302, 9 S.W.3d 501 (2000). Harris argues that the State did not "do this" and the circuit court impermissibly shifted the burden to him.

We hold that the record reflects the warrant was served on Harris on January 21, 2019, and his trial began on March 21, 2019; thus, the circuit court did not err in finding that Harris's right to a speedy trial was not violated.

Affirmed.

GRUBER, C.J., and HARRISON, J., agree.

*Gregory Crain*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Rebecca Kane*, Ass't Att'y Gen., for appellee.