Cite as 2022 Ark. App. 319

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CR-21-544

| | |
|---|---|
| JAKE NORWOOD<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | Opinion Delivered September 7, 2022<br><br>APPEAL FROM THE HOT SPRING COUNTY CIRCUIT COURT<br>[NO. 30CR-20-63]<br><br>HONORABLE CHRIS E WILLIAMS, JUDGE<br><br>AFFIRMED |

## WAYMOND M. BROWN, Judge

A Hot Spring County Circuit Court jury convicted appellant Jake Norwood of possession of a controlled substance, methamphetamine, and sentenced him as a habitual offender to ten years' imprisonment. On appeal, appellant contends that the circuit court erred by: (1) admitting the crime-lab report over his objection; (2) denying his motion for directed verdict based on him knowingly and purposely possessing methamphetamine; and (3) denying his directed verdict motion based on the failure to allow confrontation of witnesses by not requiring Detective Sears to testify. We affirm.

Officers with the Malvern Police Department made contact with appellant on February 28, 2020, after they were dispatched to 1708 Evans Street due to multiple 911 hang ups. Appellant appeared to be under the influence of a controlled substance because he was

fidgeting and continuously moving around. Appellant was searched, and a blue pouch was found in appellant's left jacket pocket. The pouch contained a clear bag that had a crystal-like substance in it. Appellant was arrested and transferred to the Malvern Police Department. While there, the suspected drugs were found to weigh 0.9 grams and a field test was positive for methamphetamine.

Appellant's jury trial took place on May 28, 2021. Deputy Dillion Ledbetter testified that he arrested appellant on February 28, 2020, while working for the Malvern Police Department. He stated that when he arrived at the dispatched address, he saw appellant waving for him. He said that appellant seemed to be under the influence of a controlled substance. Appellant was subsequently patted down, and a blue pouch was found in appellant's front left jacket pocket.[1] Deputy Ledbetter stated that when he asked appellant if the pouch contained "dope," appellant responded "yep." He testified that the evidence was taken to the police station, weighed, and field tested. He stated that he placed the evidence in an envelope, filled out the chain-of-custody form on the envelope, and placed it in an evidence locker to be transported to the Arkansas State Crime Laboratory. Deputy Ledbetter stated that only the "Chief of Police and the one CID detective" have access to the evidence locker. He subsequently identified his handwriting on the outside of the envelope. He stated that the drugs, along with the container it was in, weighed 0.9 grams.

---

[1]Appellant was on parole and had a search waiver.

2

Detective Christopher Savage of the Malvern Police Department testified that he filled out the affidavit and built the case file in this case. He also stated that he would be the person who transports evidence to the crime lab if necessary. He said that the packing slip on the outside of the envelope would indicate the contents of the package, the date the evidence was taken, and from whom. However, on cross-examination, he testified that he did not transport the evidence to the crime lab in this case. He stated that Detective Sears had transported the drugs to the crime lab.

Sammy Williams, a senior forensic chemist at the Arkansas State Crime Laboratory, testified that he received the evidence in this case and tested it for the presence of a controlled substance. He identified his initials and other identifiers on the envelope at trial. He said that he weighed the evidence before running any tests on it. He testified that the drugs had a weight of 0.5512 grams and that it was positive for methamphetamine. When the State attempted to admit the lab report, appellant unsuccessfully objected based on "the lack of chain of custody as to the drugs themselves." Upon further questioning, Mr. Williams stated that the difference between the two weights could be attributed to "the packaging being weighed and not being weighed." He said that he weighed the substance outside of the package.

Appellant renewed his objection when the State attempted to introduce the drugs into evidence. The following colloquy then took place:

DEFENSE: I renew my objection. In addition, if Detective Sears is the person who delivered those drugs to the Crime Lab he is a

3

necessary witness and the Defense has a constitutional right to confront and cross examine every witness.

THE COURT: Confrontation issue is a different issue. But this issue is whether or not it can be introduced. The Court's going to allow it to be introduced but they'll have to be introduced ~ the drug itself will remain in the possession of the court reporter. A photograph will be substituted for the jury to view what was actually tested by the chemist at the Crime Lab. Your objection is overruled.

After the State rested, the circuit court entertained the following in its chambers:

DEFENSE: Move for directed verdict on the charge of possession of controlled substance. The State has failed to present a *prima facie* case from which a reasonable jury could conclude that Jake Norwood was either knowingly or purposely in possession of methamphetamine.

Further, the testimony was inadequate and violated Mr. Norwood's rights under the Constitution to confront and cross examine his witnesses in that Detective Sears was not called to testify. And, therefore, the chain of custody is broken and Mr. Norwood has been deprived his right to cross examine Detective Sears as a witness.

THE COURT: Okay, Ms. Rock?

THE STATE: Your Honor, there's been ample testimony to prove each of the elements of the offense with which Mr. Norwood is charged. There's been testimony that the substance tested and removed from Mr. Norwood's person was indeed methamphetamine, that it's a controlled substance, that it weighs less than two grams, which would qualify it to be charged as a class D felony. Deputy Ledbetter also testified that when he patted down the defendant he inquired about the pouch. He confirmed it was his and confirmed there was dope in it. So there's not any question that Mr. Norwood knew he had controlled substance in his pocket. It came out of the jacket he was physically wearing at the time.

4

As to the chain of custody under *Tatum v State*, as well as other Arkansas case law, it's not necessary for every person who could have conceivably come into contact with the drug sample on its way back and forth from the Crime Lab to testify. There's certainly been adequate testimony and assurance that the drugs that were taken from Mr. Norwood are the very drugs that were tested at the Crime Lab and the same ones that have been brought back here today and the results introduced.

THE COURT: Okay. Motion for directed verdict is denied. The Court finds that there's substantial compliance with the maintaining of the drugs. The drugs were actually sealed and placed in a lock-down facility under, I think he said C, locker C. That is the Crime Lab locker where drugs that are confiscated are sealed off. It's clearly identifiable by Ledbetter who confiscated the drugs. Clearly identified as a package that was sealed up to be delivered to the Crime Lab. Submission sheet reflects that Sears delivered those drugs to the Crime Lab. The Crime Lab opened the drug. Mr. Williams, Sandy [sic] Williams from the Crime Lab testified that he opened them up and then took all the drugs out that were sealed and weighed them and then tested them. Three tests confirmed it was methamphetamine. It was methamphetamine in the pre-stage where the officer took it and tested it by a field test. Confirmed to be positive for meth. It was sent to the Crime Lab. Confirmed by the Crime Lab that it was positive for meth. The drugs ~ there is a factual issue for the jury to make determination of concerning the drugs and who they were in possession of. And they were confiscated from the person of Mr. Norwood. Therefore, that factual issue they must make determination of.

It is not a factual issue concerning the issue of whether or not the defendant got to cross examine the defendant, I mean, the State's potential witness. The fact that Sears delivered the drugs to the Crime Lab that were sealed and were unsealed by the Crime Lab, there is no proof whatsoever that there's been anything altering concerning that. There was clear enough information for substantial compliance by the State of Arkansas in that the drugs were previously tested on a field test as positive for meth. They were positive from the Crime Lab. They were

5

the same drugs that were inside the package that was cut open in the courtroom today that were tested by the Crime Lab.

The Court finds substantial compliance and his right to cross examine Sears would be of no significance to this case. Sears had nothing to do with the case other than to take the drugs from the Malvern Police Department and deliver them to the Crime Lab for purpose of testing. There's no proof whatsoever been presented that can be disclosed to this Court that in any way that Officer Sears would have caused those drugs to be jeopardized in any way and, therefore, substantial compliance. Motion for directed verdict is denied. Cross examining him would not be able to give any other new information in this case.

Appellant then rested without putting on any evidence. He renewed his directed-verdict motions. The jury subsequently found appellant guilty of possessing a controlled substance, methamphetamine, and sentenced him as a habitual offender to ten years' imprisonment. Appellant's timely appeal followed.

A motion for directed verdict at a jury trial is a challenge to the sufficiency of the evidence.[2] In reviewing a challenge to the sufficiency of the evidence, this court determines whether the verdict is supported by substantial evidence, which is evidence that is forceful enough to compel a conclusion one way or the other beyond speculation or conjecture.[3] The evidence is viewed in the light most favorable to the verdict, and only evidence supporting the verdict will be considered.[4] Circumstantial evidence may provide a basis to

---

[2]*Baker v. State*, 2019 Ark. App. 515, 588 S.W.3d 844.

[3]*Id.*

[4]*Id.*

support a conviction if it is consistent with the defendant's guilt and inconsistent with any other reasonable conclusion.[5] Whether evidence excludes every other hypothesis is left to the jury to decide.[6] The credibility of witnesses is an issue for the jury and not the court.[7] The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence.[8]

Although appellant's sufficiency arguments are his second and third points on appeal, we address them first because double-jeopardy concerns require a review of the sufficiency of the evidence prior to a review of any asserted trial errors.[9]

Appellant argues that the circuit court erred by denying his motion for directed verdict based on him knowingly and purposely possessing methamphetamine. Appellant's argument is nothing more than a challenge to Deputy Ledbetter's credibility. However, issues of credibility are left to the sound discretion of the jury.[10] In this case, the jury was free to believe that appellant confirmed to Deputy Ledbetter that the pouch found in his jacket pocket contained drugs. Therefore, we affirm this point.

---

[5]*Id.*

[6]*Id.*

[7]*Id.*

[8]*Id.*

[9]*See A.M. v. State*, 2021 Ark. App. 418.

[10]*Baker*, supra.

Next, appellant argues that the circuit court erred by denying his motion for directed verdict based on the failure to allow confrontation of witnesses by not requiring Detective Sears to testify. More specifically, appellant contends that the circuit court erred by denying his motion for directed verdict because he was unable to confront Detective Sears at his trial. This argument is not preserved for our review. When the State attempted to introduce the drugs into evidence, appellant objected based on the lack of proof of chain of custody and his inability to confront Detective Sears. However, the circuit court failed to make a ruling on the confrontation issue, stating that it was a different issue. To preserve a Confrontation Clause argument on appeal, a defendant must obtain a ruling from the circuit court.[11] Here, appellant failed to get a ruling on his confrontation argument at the time of his initial objection; therefore, his directed-verdict motion encompassing the argument was not enough to preserve it for our review.

However, assuming arguendo that the directed-verdict motion was enough to preserve the argument, we would affirm. In denying appellant's directed-verdict motion, the circuit court found that cross-examination of Detective Sears would be of no significance and would not give any other new information because Detective Sears had nothing to do with the case other than to take the drugs from the Malvern Police Department to the crime lab for the purpose of testing. Essentially, the circuit court found that Detective Sears was not a necessary witness for purposes of confrontation in this case. Given the facts, we agree.

---

[11]*Bertrand v. State*, 363 Ark. 422, 214 S.W.3d 822 (2005).

Appellant also argues that the circuit court erred by admitting the crime-lab report into evidence over his objection. During the testimony of Mr. Williams, appellant objected to the State's attempt to introduce the crime-lab report into evidence. More specifically, appellant objected to the lack of proof of the chain of custody as to the drugs. The circuit court overruled the objection, having found substantial compliance by the State. Appellant argues that this ruling was in error.

The purpose of establishing a chain of custody is to prevent the introduction of evidence that has been tampered with or is not authentic.[12] Authentication requirements are satisfied if the circuit court, in its discretion, concludes that the evidence presented is genuine and that, in reasonable probability, it has not been tampered with or altered in any significant manner.[13] It is not necessary that the State eliminate every possibility of tampering.[14] Minor uncertainties in the proof of chain of custody are matters to be argued by counsel and weighed by the jury, but they do not render the evidence inadmissible as a matter of law.[15] Proof of the chain of custody for interchangeable items like drugs or blood needs to be more conclusive.[16]

---

[12]*Hawkins v. State*, 81 Ark. App. 479, 105 S.W.3d 397 (2003).

[13]*Raquel-Dieguez v. State*, 2015 Ark. App. 626, 475 S.W.3d 585.
[14]*Matlock v. State*, 2019 Ark. App. 470, 588 S.W.3d 152.

[15]*Hawkins*, supra.

[16]*Duff v. State*, 2018 Ark. App. 112, 540 S.W.3d 738.

9

Appellant argues that the circuit court erred by receiving into evidence contraband that was not properly authenticated due to a marked difference in the two weights testified to by Deputy Ledbetter and Mr. Williams. He also contends that the State failed to establish authenticity when it did nothing more than trace the route of the envelope. Because appellant failed to specifically challenge the weight discrepancy before the circuit court, that portion of the argument is not properly before us. The circuit court was satisfied that the drugs tested were the same drugs that had been found in appellant's jacket pocket. Deputy Ledbetter testified that he placed the drugs in the envelope, sealed it, filled out a chain-of-custody form on the envelope, and put it in the evidence locker to be transported to the crime lab. Detective Savage testified that Detective Sears took the envelope to the crime lab. Mr. Williams testified that he received the sealed envelope and opened it to test its contents. He then sealed it again so it could be returned to the evidence locker, placing his initials on the envelope. All three witnesses testified that the envelope admitted at trial was the same envelope that contained the drugs taken from appellant. The circuit court was satisfied that the envelope's contents had not been tampered with and found that there was substantial compliance with the chain-of-custody requirements.[17] We find no error and affirm.

Affirmed.

VIRDEN and GRUBER, JJ., agree.

---

[17]To the extent appellant contends that the evidence was inadmissible because he was unable to confront Detective Sears, it is not preserved because appellant failed to get a ruling on that issue when he objected.

*Gregory Crain*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brooke Jackson Gasaway*, Ass't Att'y Gen., for appellee.